## D. M. Osborne & Company *vs.* Charles Marks.

### January 3, 1885.

Sale of Harvester—Warranty—Breach.—Upon this warranty of a harvester and binder: "All our machines are warranted to be well built, of good material, and capable of cutting, if properly managed, from 10 to 15 acres per day. If, on starting a machine, it should in any way prove defective and not work well, the purchaser shall give prompt notice to the agent from whom he purchased it, and allow time for a person to be sent to put it in order. If it cannot then be made to do good work the defective part will be replaced or the machine taken back, and the payment of money or notes returned. Keeping the machine during harvest, whether kept in use or not, without giving notice as above, shall be

deemed conclusive evidence that the machine fills the warranty;"—*held*, that keeping the machine beyond the first harvest season was not conclusive evidence that it filled the warranty, where it failed to work well on starting the first season, and the purchaser at once gave notice of the fact, the seller thereupon tried to put it in order and it still failed, of which the purchaser also gave due notice, and the seller again tried, but failed to make it work well.

Same—Action on Warranty—Evidence.—In an action on such a warranty it is proper for the purchaser to prove that it worked badly after the first season, it being shown that it worked in the same way from the beginning, and also that it wasted grain, and to what extent, if due to defects in the machine, for the purpose of showing that the machine was not what it was warranted.

Same — Renewal of Purchase-Money Note.— Where notes were given for the purchase of a machine with warranty, a renewal or payment of one of the notes, without mentioning any counterclaim for a breach of the warranty, would be strong evidence that none existed, but would not be a release or absolute waiver of one if it did exist.

Same—Damages.—In an action on a warranty of a harvester and binder, it is improper, to establish the damages, to ask what, in its actual condition, it was worth as a harvester and binder; the question should be, what, in that condition, is its market value generally?

Same—Market Value—Opinion.—A witness who has no knowledge of the market value, although he may have worked the machine or seen it worked, is not competent to give an opinion of its value.

Plaintiff (a corporation) brought this action in the district court for Lyon county, upon a promissory note given in part-payment for a harvester and binder. The answer admitted the making and delivery of the note, and, as a counterclaim, pleaded damages from an alleged breach of a written warranty made on the sale of the machine. The facts and evidence are stated in the opinion.

Upon the trial, before *Webber*, J., and a jury, the defendant had a verdict of "no cause of action." Plaintiff appeals from an order refusing a new trial.

*G. D. Emery*, for appellant.

*V. B. Seward*, for respondent.

GILFILLAN, C. J.    Action on a promissory note for $125, dated July 19, 1880, due November 1, 1882. Answer: that the note, with two

others which have been paid, to the amount of $212.03, were given for the price of a harvester and binder, sold July 19, 1880, by plaintiff to defendant, with this written warranty: "All our machines are warranted to be well built, of good material, and capable of cutting, if properly managed, from 10 to 15 acres per day. If, on starting a machine, it should in any way prove defective and not work well, the purchaser shall give prompt notice to the agent from whom he purchased it, and allow time for a person to be sent to put it in order. If it cannot then be made to do good work, the defective part will be replaced, or the machine taken back and the payment of money or notes returned. Keeping the machine during harvest, whether kept in use or not, without giving notice as above, shall be deemed conclusive evidence that the machine fills the warranty." The breach alleged is that the machine was not well built nor of good material, and would not under any management cut more than five or six acres per day; that it proved defective and would not work well at all, of which defendant forthwith notified plaintiff's agent, who tried, but failed to make it work; that plaintiff refused and neglected to repair it or replace the defective parts, and refused to take it back and return to defendant the money paid and notes given by him; and that the machine was never of any value whatever. Damages to the amount of $497 are alleged, for which judgment in favor of defendant is demanded. The reply takes issue on the alleged breach of warranty and damages, and alleges that August 7, 1882, in consideration of an extension by plaintiff of the time for payment of one of the notes (not that in suit) given for the price of the machine, the defendant, in writing, released it from the warranty, and all claims arising out of the same.

Some of the points made by appellant require a construction of the warranty in respect to notice of the machine not working well. As to that it claims that the first harvest was to fix and determine whether the warranty was satisfied or not, and after that time no complaint or notice (no matter, as we understand it, how many times complaint had been made and notice given during the first season, if, whenever notified, during that season it fixed the machine so that it would work) could change or vary the fixed rights of the appellant

under the contract. Ordinarily, any defect in the machine within the terms of the warranty, existing at the time of the sale, no matter when discovered, (certainly if within a reasonable time,) would be a breach. The warranty in this case modifies this rule. It is in effect an agreement that if the machine should, during the first season, work as warranted, that should be taken as conclusively showing it to be as warranted, and that a failure during that season to give notice of defects should be taken as conclusive evidence that the machine worked as warranted, and that in case of notice the appellant should have a reasonable opportunity to cure the defects. Though, upon a strict construction of the terms, notice is required only when (at any time during the first season) it should be first discovered that the machine failed to work, leaving it for appellant, on that notice, to ascertain wherein the defects lay and correct them, if they could be corrected, or be liable on its warranty if it failed so to do, a more liberal and probably the proper construction is that, after a first attempt by appellant upon notice to correct defects, the respondent was to give the machine a reasonable trial; and if upon such trial it failed, to give appellant reasonable notice thereof. But it would be going beyond not only the strict terms but the spirit of the warranty to hold that during the entire first season the respondent should be repeatedly giving notice, and repeatedly giving appellant opportunity to tinker at the machine and try to make it work, and that if respondent kept it over that season, even though appellant failed to permanently cure the defects, it should be conclusively taken to fill the warranty.

We think there was evidence on the trial to show that respondent did as much as the warranty required of him, and that the first season's trial showed a breach of the warranty. It tends to show that when first set to work in the field by appellant's agent, it worked badly; that he finally got it to work very well; that the next day it failed again, and, after two or three days trying it, respondent gave the agent notice, who succeeded in making it run a little better for a short time; but the next day it failed again, of which the respondent gave the agent notice, who, two or three days after, went with an expert and fixed it so that it worked for half a day, when it was as bad

as ever.   Respondent continued trying it to the end of harvesting.
His harvesting took altogether 14 days, during which the machine
cut about 100 acres, but little more than half what it ought to have
cut, besides which it bound badly, and wasted more grain than it
ought.   Respondent worked it two seasons succeeding the first; but
it never worked well except for a brief period after each time that the
agent attempted to put it in condition.

The evidence that the machine worked badly the second and third
seasons, it being shown that it worked in the same way from the be-
ginning, that it wasted grain, and to what extent it wasted, assum-
ing it to have been due to defects in the machine, was proper to show
that, when sold, the machine was not what it was warranted to be.

On the trial the appellant gave in evidence the written release
pleaded in the reply.   To this, respondent gave evidence tending to
show that he could not read English well; that when appellant's
agent came to him with papers to sign, on the date of the release, he
told him he could not read English, and that he would have to take
his word as to what the papers were; that the agent had only three
papers for him to sign, of which the agent told him one was a note,
one a chattel mortgage, and the third a notice to appellant to have a
note extended; and that he signed the papers supposing them to be
such.   If the jury found this evidence to be true, then the signature
was obtained by fraud, and the release was void.

At the date of the release the respondent gave a new note in re-
newal of one of the original notes given for the price of the machine.
The appellant claims that by giving the new note, without reserving
his claim for damages upon the breach of warranty, the respondent
waived such claim.   With respect to any mere defence to the original
note, the renewal might be an absolute waiver, or, under some cir-
cumstances, an estoppel against asserting the defence.   But it would
not be so with a counter-cause of action, though arising out of the
same transaction as the note.   He might pay the note, or let judg-
ment go against him upon it, and then bring suit on his counter-cause
of action.   One insuperable objection to holding that payment or re-
newal of the note would operate as a waiver or release of the counter-
claim, where nothing was said about it, would be that such waiver

or release requires a consideration to sustain it, and in such case there would be none. Undoubtedly, voluntary payment or renewal, without saying anything about a counterclaim growing out of the same transaction as the note, would be very strong evidence against the existence of the counterclaim, for such a course would not be in accordance with the usual conduct of men. But that is all that could be claimed for it.

So far as the foregoing matters are concerned, the rulings of the court below were correct. But upon some other matters, essential, though of minor importance, its rulings were erroneous. The general measure of damages upon such a warranty is the difference between the market value of the chattel, if it were such as it was warranted to be, and its market value as it actually was. After proving what the market value of the machine would have been if it had been as warranted, the respondent asked his witnesses what, in its actual condition, was it worth as a *harvester and binder*. These questions were properly objected to, but admitted. Two objections are made, each well taken; *first*, that the witnesses were not shown to have sufficient knowledge of the market value of such machines to express an opinion; *second*, the questions are based on an improper rule of damages. The witnesses showed no other knowledge of the value than might be acquired from working the machine or seeing it work. This might enable them to testify to its *condition*, but would not enable them to give an opinion of its market value. The questions were also bad because limited to the value for a specific purpose, when the inquiry should have been as to its market value generally.

It was also proper to show, as appellant offered but was not permitted to do, that, when paying one of the notes given for the price of the machine, defendant made no objection to paying it, and made no complaint that the machine did not work well. It would have had some tendency to prove that he had no complaint to make.

Order reversed.