D. M. OSBORNE & Co., Appellant, vs. McQUEEN, Respondent.

*September 21 — December 14, 1886.*

SALE OF CHATTELS: WARRANTY: PROMISSORY NOTES: COUNTERCLAIM. *(1) Acceptance: Waiver of conditions of warranty: Mortgage by vendee. (2) Time for testing after attempt by vendor to repair. (3) When return not necessary before bringing action for breach. (4) Waiver of defense to notes given for price: Counterclaim for breach of warranty. (5) Damages: Evidence of value after changes and repairs by vendor. (6) Machine sold an entirety: Value of parts not to be shown. (7) Warranty of self-binding harvester construed: "Cutting."*

1. The fact that the purchaser of a warranted machine, after having notified the vendor to repair it or take it back and while waiting for him to do so, mortgaged it to a third person, is *held* not to bind the purchaser to keep the machine, where the vendor did not repair it according to the warranty and the purchaser again notified him to take back the machine, the mortgage being released about the same time.

2. Where a machine warranted to work well fails to do so and is repaired by the vendor, the vendee is entitled to a reasonable time thereafter to test the machine again without being charged with its final acceptance.

3. Where a machine is sold under a warranty providing that if it proves defective the defective part will be replaced or the machine *taken back*, the purchaser, after he has notified the vendor that

it is defective and the latter has failed to remedy the defect, need not return the machine before bringing an action for breach of warranty.

4. Though in a note given for the purchase price of a machine the maker expressly waives all defense thereto, he may nevertheless, in an action upon the note, counterclaim for damages for a breach of the warranty of the machine.

5. A harvesting machine, sold under warranty, having proved defective, the vendor attempted, both during the season in which it was sold and in the following year, to remedy the defects by repairs and improvements. *Held,* in an action for breach of the warranty, that evidence of the value of the machine in each of said years was admissible.

6 In an action for breach of warranty of a machine, the question, in assessing the damages, is what was the value of the machine for the uses for which it was purchased and intended; and the value of separate parts — as of the iron in it — cannot be shown.

7. A "self-binding harvester" was warranted to be capable of "cutting" a certain number of acres per day. *Held,* that *cutting* included *binding*.

APPEAL from the Circuit Court for *Dodge* County.

Action upon promissory notes given for a part of the purchase price of a harvesting machine. Counterclaim for damages from a breach of warranty. The plaintiff is a corporation. The substance of the pleadings and of the evidence given on the trial will sufficiently appear from the opinion.

The trial court held — in its instructions to the jury — that the plaintiff was entitled to recover upon the notes, but that if there had been a breach of the warranty the defendant was entitled to have his damages by reason of such breach set off against the amount due on the notes; that such damages were the difference between the purchase price of the machine and its actual value, together with a proportionate amount of the interest due on the notes; that by the judgment in the case the notes would be discharged, and that the machine would remain the property of the defendant.

D. M. Osborne & Co. vs. McQueen.

The jury returned a special verdict by which they found that the machine, though properly managed by the defendant, did not work well in binding in 1881; that the defendant gave prompt notice of that fact to the plaintiff's agents, but they failed to make the machine do good work in that year; that the binding part of the machine (which was the defective part) was replaced, but that the machine did not after that do good work in 1882, though properly managed; that the machine was not capable of cutting from ten to fifteen acres per day; that at the close of the harvest of 1882 the harvester was worth $70, and that the whole machine was then worth $75; and that the defendant did not promise to pay the notes after they became due without any consideration or claim for damages.

It seems to have been determined that the defendant's damages were equal to the amount due on the notes, and judgment was rendered in his favor for costs. The plaintiff appealed.

For the appellant there was a brief by *Eaton & Hemple*, attorneys, and *J. J. Dick*, of counsel, and oral argument by *Mr. Dick*. They contended, *inter alia*, that the defendant must rescind the contract by returning the machine before the warranty can be enforced. *Worden v. S. M. H. Co.* 11 Neb. 116; *Wendall v. Osborne*, 63 Iowa 69; *Rowell v. Oleson*, 32 Minn. 288; *J. I. Case T. M. Co. v. Vennum*, 23 N. W. Rep. 563; *Davis' Sons v. Robinson*, 67 Iowa, 355; *Paulson v. D. M. Osborne & Co.* 27 N. W. Rep. 203. A party has the right to establish the value of separate parts of the machine, such as the belts, rods, castings, etc.; for all these would be of value if the machine was broken up entirely. *J. I. Case T. M. Co. v. Haven*, 65 Iowa, 359. The parties to a contract of warranty may make such terms and conditions as they please, and in this case the parties are limited to and bound by the very terms of the warranty. *Bayliss v. Hennessey*, 54 Iowa, 11; *Wendall v. Osborne*, 63 id. 69;

*Rowell v. Oleson*, 32 Minn. 288; *Brown v. Russell*, 2 West. Rep. 666.

The case was submitted for the respondent on the brief of *H. W. Lander*.

The following opinion was filed October 12, 1886:

ORTON, J. About the 5th of July, 1881, the respondent purchased of the appellant a machine called " Osborne's Self-binding Harvester," at the agreed price of $270, and paid $100 on the same, and gave two notes for the balance, one for $35, dated September 8, 1881, payable the 1st day of October, the same year, and the other for $135, of the same date, payable the 1st day of October, 1882, at seven per cent. interest. Appended to each note there was a waiver of " all relief from valuation, appraisement, stay, exemption, and homestead laws, *and all defense hereto.*" The machine was purchased on the following written warranty: " All our machines are warranted to be well built, of good material, and capable of cutting, if properly managed, from ten to fifteen acres per day. If on starting a machine it should in any way prove defective and not work well, the purchaser shall give prompt notice to the agent from whom he purchased it, and allow time for a person to be sent to put it in order. If it cannot then be made to do good work, the defective part will be replaced, or the machine taken back and the payments of money or notes returned. Keeping the machine during harvest, whether kept in use or not, without giving notice as above, shall be deemed conclusive evidence that the machine fills the warranty."

The action was brought on the notes. The answer alleged such consideration, and set up the warranty, and alleged that upon the trial of said machine in the harvest of 1881 it proved defective and worthless for the purpose for which it was purchased, and would not do good work, and was not well built, and that the defendant gave the plaintiff's agent,

from whom he purchased it, prompt notice thereof, and that such agent sent several experts to fix said machine and put it in order, but he was unable to do so, but promised, if defendant would give said notes, pay the $100, and keep the machine, that he would repair and fix the machine so that it would in all things come up to the warranty, and would, if necessary, furnish the defendant with a new binder that would answer the purpose and satisfy the warranty, and that he thereupon paid said $100 and gave said notes. The answer further alleged that the plaintiff's agent furnished a new binder, and attempted to put the machine in order for the harvest of 1882, and yet said machine wholly failed to do good work or answer the demands of the warranty, upon a sufficient trial thereof in said harvest, and it again proved worthless for the purpose for which it was purchased; and that the defendant thereupon notified the plaintiff thereof, that it should repair said machine and make it answer the warranty, and it has since failed and refused to do so; and that then the defendant notified the plaintiff to take back the machine and deliver up said $100 and said notes, which it refused to do; and the defendant demanded damages for the breach of said warranty of $100. These facts were pleaded as a counterclaim against the plaintiff. The plaintiff replied to said answer, admitting said warranty, and alleging that it changed and greatly improved said binder, and that the defendant expressed himself satisfied therewith, and accepted the same and assumed ownership thereof, and by mortgages placed said machine beyond the reach of the plaintiff. The answer unquestionably sets up a good counterclaim against the plaintiff, and we shall no further notice the objection on the trial that it did not.

The evidence tended strongly to show that the facts set up in the counterclaim were true, and that the defendant notified the plaintiff to take back the machine for the rea-

son that it did not comply with the warranty, and to pay back said $100 and surrender said notes, and that the plaintiff failed either to again repair the machine or attempt to make it comply with said warranty, or to take back the machine and pay back said money or deliver up said notes. In respect to defendant's mortgaging said machine, it was in proof only that early in May, 1883, he mortgaged it to one Devlin to secure $200, and that said mortgage was released July 13, the same year, about the time the defendant notified the plaintiff to take back the machine, and some time before this action was commenced, so that it could cut no figure as evidence of the acceptance of the machine in its then condition, or of a waiver of the conditions of the warranty.   The defendant was then waiting for the plaintiff to repair the machine, and had notified it to do so or to take it back.   This disposes of the exception of the plaintiff to the refusal of the court to embrace this fact in a special finding as immaterial.   When, in 1882, the plaintiff attempted to repair the machine by a new binding attachment, the defendant had a right to give such repaired machine a new and fair trial, without being charged with its acceptance, and it appears that he did give it such trial and found the machine still insufficient to cut and bind the number of acres of grain assured by the warranty, or to bind the grain in a proper manner, and not satisfying the conditions of the warranty in any respect.   No further attempt to repair the machine was made by the plaintiff, and, after waiting most certainly a reasonable time for it to do so, the defendant then gave notice of its continued insufficiency, and demanded a return of the money and note and that the plaintiff should take the machine away.   It would be great injustice now to claim that such delay, which was for the sole advantage of the plaintiff, and the retention of the machine by the defendant as his own, on the faith of the promise and frequent at-

tempts of the plaintiff to repair it, are evidence of its final acceptance. There is not a particle of evidence in the case of such acceptance or waiver of the conditions of the warranty by the defendant, except the testimony for the plaintiff that he had expressed himself satisfied with the machine, which was contradicted by the defendant, and the testimony was evidently disbelieved by the jury. This disposes of all exceptions relating to the acceptance of the machine or a waiver of the conditions of the warranty by the defendant. The evidence excludes them from the case. The frequent and continued attempts of the plaintiff to repair the machine, even to furnishing a new binding attachment just before the last and largest note became due, were a confession that hitherto the machine was imperfect and insufficient.

In this case there appear to have been thirty requests by the plaintiff to specially charge the jury, thirty-eight questions propounded for a special verdict, two hundred objections and exceptions, and sixty-eight assignments of error. Inasmuch as nearly all of these exceptions are based upon a misapprehension of the terms of the warranty and of the undisputed evidence in the case, only such as are clearly applicable to the case will be considered.

1. The warranty does not require a return of the machine by the defendant. The language is that "the defective part will be replaced or the machine *taken back*."

2. The condition is that "keeping the machine during harvest, whether kept in use or not, without notice as above [prompt notice of the defect], shall be deemed conclusive evidence that the machine fills the warranty." The fact was undisputed that such prompt notice of the defect was given, and repairs were attempted at once, during the first harvest, and continued from time to time, as we have above seen. The exceptions, therefore, based upon keeping the machine without notice are not in the case.

3. The waiver of all defense appended to the notes is not applicable to such a case. The answer sets up an affirmative cause of action, by way of counterclaim for a breach of the warranty, and demands damages, and the replication takes issue, by general denial and various allegations, with such cause of action. Such a counterclaim and replication have the effect of an original suit on the special contract of warranty and defense by answer. They are not in the nature of a defense to the notes. The damages recovered consist of the whole or part of the consideration paid, and the notes are canceled by the effect of the judgment. The warranty is an independent contract, which subsists with this waiver of defense and is not affected by it. The same counterclaim was allowed in *Osborne v. Marks*, 33 Minn. 56, upon just the same form of notes and warranty, and the case is in most respects in point. In *Tunell v. Osborne*, 31 Minn. 343, the action was on the warranty, and a recovery allowed on nearly the same facts as in this case, and it was held that no return of the machine by the purchaser was required by the same warranty.

4. Exception was taken to the admission of evidence as to the value of the machine in 1881 and also in 1882. This was proper, because the plaintiff had made attempts from time to time in both years to improve and repair the machine, and all such changes affected the value of the machine to the defendant by lessening or increasing or not materially affecting it. Such was the rule laid down in *Melby v. Osborne*, 33 Minn. 492, another case like the present except that it was a direct action on the warranty.

5. Exception was taken to the refusal of the court to allow proof of the value of the iron in the machine. This ruling was proper, because the machine was an *entirety* and it would be improper to parcel it. The material question was, What was the value of the machine generally, in its then con.

D. M. Osborne & Co. vs. McQueen.

dition, for the uses for which it was purchased and intended? It was so held in *Osborne v. Marks, supra.*

6. Exception was taken to the allowance of the question "whether the machine was capable of cutting and properly *binding*, if properly managed, from ten to fifteen acres per day, either in 1881 or 1882," as not being within the warranty. The reason given for the objection was that the warranty was only for the *cutting* and not the *binding*. The machine was a "self-binding-harvester," and nothing less, and this is too clear for argument.

In respect to the numerous exceptions taken to the refusal of the court to submit to the jury the special questions presented by the learned counsel of the plaintiff, it is sufficient to say that the questions submitted by the court embraced all the material controverted facts, and were too numerous for that purpose, if they were at all objectionable. It does not appear that they were in any respect deficient. The cause was very ably and fully tried by the learned counsel on both sides, and nothing appears to have been overlooked which could have any possible relation to the issue. The evidence was very strong and preponderating in favor of the verdict rendered, and the judgment appears to be just.

*By the Court.*— The judgment of the circuit court is affirmed.

A motion for a rehearing was denied December 14, 1886.