EYERS et al. v. HADDEM et al.

(Circuit Court, W. D. Wisconsin. November 30, 1895.)

1. WARRANTY OF CHATTELS—REMEDIES FOR BREACH.
When a chattel is sold with a warranty of quality, accompanied by an agreement that if it proves to be inferior in quality it may be returned to the seller, or exchanged for another article, the buyer, upon breach of the warranty, is not restricted to such special remedy, but may waive it and sue for the breach of warranty.

2. SAME.
Defendants sold plaintiffs a stallion, warranting him to be a reasonable foal getter, and agreeing, if he should prove not to be so, to replace him with another horse, if returned as sound and in as good condition as when purchased. The stallion having proved not to be a reasonable foal getter, held, that plaintiffs were not bound to return him to defendants, or give them an opportunity to supply another horse, but might sue defendants for breach of the warranty.

Jackson & Jackson, for plaintiffs.
Fethers, Jeffris & Fifield, for defendants.

BUNN, District Judge. This is an action brought by the plaintiffs, who are citizens of North Dakota, against the defendants, who are citizens of Wisconsin, upon a warranty in the sale of a stallion. The defendants are importers of blooded horses at Janesville, Wis., and on March 11, 1893, sold to the defendants an imported stallion, by a bill of sale containing the following printed warranty:

"We hereby guaranty the above-named horse to be a reasonable foal getter, with proper care and handling. In case he should prove not to be so, we agree to replace him with another horse of same breed and price, upon delivery to us of the above-named horse at our stables without cost to us, if as sound and in as good condition as when purchased of us."

The case was tried before a jury at La Crosse in September, 1895, and a verdict rendered in favor of the plaintiffs for $1,350. The price paid for the stallion was $2,700. The plaintiffs' evidence was directed to show that the horse, instead of being a reasonable foal getter, was what is known among horsemen as a "ridgling," and nearly worthless as a foal getter. The plaintiffs' evidence went to show that during the season of 1893, when the plaintiffs stood him for service, he got only about 10 per cent. of mares served with foal, and that his value was not more than that of a common workhorse, or about $150. After the evidence was in the defendants asked the court to direct a verdict in their favor, on the ground that the evidence showed that plaintiffs did not return the horse according to the conditions of the warranty, and give the defendants the opportunity to replace him with another horse. The court overruled the motion pro forma, reserving the question for further argument upon a motion for a new trial, in case there should be a verdict in favor of the plaintiffs. That motion has now been heard, and fully argued and considered, and the court is of opinion that it must be overruled. The rule is laid down in 28 Am. & Eng. Enc. Law, 827, as follows:

"In a sale of certain classes of articles, the contract of sale frequently specifies the buyer's remedy in case the warranty is not complied with. The buyer is not concluded by such a provision, however, but may waive the special remedy, and proceed as if the contract had been silent in that particular. The special remedy usually allowed in such contracts is the privilege of returning the article, if it proves not to be as warranted, and to receive back the price paid."

And it seems to be fully supported by the authorities. One of the leading and best-considered cases on the subject is that of Manufacturing Co. v. Gardner, 10 Cush. 88. In that case the court, by Metcalf, J., says:

"When a seller, in addition to a warranty of property, makes a promise to take it back if it does not conform to the warranty, we cannot hold that such superadded provision rescinds and vacates the contract of warranty. We are of opinion that in such case the buyer has, if not a double remedy, at least a choice of remedies, and may either return the property within a reasonable time, or keep it and maintain an action for breach of the warranty."

The same ruling was made by the supreme court of Connecticut in an opinion by Park, C. J., in Shupe v. Collender, 56 Conn. 489, 15 Atl. 405. In Perrine v. Serrell, 30 N. J. Law, 454, the action was on a warranty in the sale of a horse, with a provision that if the horse did not suit he might be returned, and the seller would take him back and send one that would suit. The court held that this latter provision was independent of the warranty, and that the purchaser was not obliged to return the horse, but could maintain his action upon the warranty. In Love v. Ross, recently decided (October, 1893) by the supreme court of Iowa, reported in 56 N. W. 529, the contract was for the sale of a stallion, with a warranty that he was a reasonably sure foal getter under favorable circumstances, and in default of which the purchasers could return the stallion to the sellers in as good condition as he was then in, and the sellers would exchange him for another, giving or receiving the actual difference of value in the two animals. In my judgment the case is not distinguishable from the one at bar. It was held that the purchasers had the right to retain the horse and to recover damages for the breach of the warranty, or to return him and receive another horse in exchange upon the terms stated. Hefner v. Haynes, by the same court, decided in 1894, reported in 57 N. W. 421, holds to the same rule under a similar warranty in the sale of a stallion. The supreme court of Minnesota, in Mandel v. Buttles, 21 Minn. 391, and Fitzpatrick v. D. M. Osborne & Co., 50 Minn. 261, 52 N. W. 861, has held the same doctrine, following Manufacturing Co. v. Gardner, supra. Kemp v. Freeman, 42 Ill. App. 500, was an action upon the following warranty on the sale of a stallion:

"We warrant the animal to be sound and healthy, and in every respect an average breeder; and, in case he fails to be an average breeder, we agree to take him back and replace him with another horse of equal value and merits."

And the court says:

"The transaction between the parties was an unconditional, absolute, and fully-completed sale, with a warranty of the seller superadded. Had there been no condition in the contract by which the appellants bound themselves to take the stallion back in case of a breach of the warranty, the appellee could only have kept the horse and sought damages for the breach. The clause by which the appellants agreed that the horse might be returned if there was a breach of the warranty only operated to give the appellee that privilege, which otherwise he would not have had."

The supreme court of Wisconsin has affirmed the same doctrine in Osborne v. McQueen, 67 Wis. 392, 29 N. W. 636, and in Park v. Richardson & Boynton Co., 81 Wis. 399, 51 N. W. 572.

I have examined all the cases cited by the defendants in opposition to this construction of the warranty, and have not found one that may be properly said to take the other view and support the defendants' contention. In most of them there is a plain obligation upon the purchaser to return, either expressed or necessarily implied. One case which is relied upon by the defendants is Himes v. Kiehl, 154 Pa. St. 190, 25 Atl. 632. In that case the warranty related to the sale of an engine, and the point made by the defendants in an action upon the warranty was based upon the proposition that

the guaranty in suit was "that the engine would give sufficient power to run the separator, or that they would take it back," and that the plaintiffs, without complaint or offer to return the engine, continued to use it, and afterwards sold it, without an offer to return. The court held the contention good, and that it should have been affirmed. In that case it was clearly a condition of the guaranty that the engine should be taken back if it did not give sufficient power to run the separator. That was all the guaranty there was. In another case much relied upon on the hearing (Hills v. Bannister, 8 Cow. 32), there was a sale of a church bell, and the vendor had guarantied that it should not crack for one year, and to recast it if it did crack. It was properly held that an action was not maintainable without first giving the sellers an opportunity to recast the bell. That was the substance of their guaranty,—that they would recast the bell in case it cracked within the year,—and the law would not hold them to any other or different measure of relief.

In the proper construction of the warranty in the case at bar, there are one or two other considerations which I think should have some weight. The warranty is in print, being part and parcel of a printed blank for the sale of horses by the defendants, furnished and in common use by them. The guaranty is absolute and complete in itself, closing with a full stop. The provision for a return of the horse, which is superadded, does not in terms make it obligatory upon the purchasers to return him. It only says that upon his delivery to the sellers without cost, if as sound and in as good condition as when purchased, the sellers will replace him with another horse. It is only by construction that any obligation can be put upon the purchasers to return the horse. It would have been very easy by the change of a few words, to have placed the obligation upon the purchasers, in express terms, that is now sought to be put upon them by construction. Under these circumstances, it would seem proper to apply the rule that is sometimes applied, that, when there is doubt about the proper construction, to construe the contract most strongly against the person furnishing the printed blank containing the provision in question.

It is evident that, if the construction contended for by the defendants be the true one, the remedy under the warranty, in the circumstances of this case, might amount to but very little. Under the provision that the horse must be as sound and in as good condition when returned as at the time of the sale, it is evident that the purchasers could refuse to receive him back if he lacked in any degree of being in as good condition as when sold. The sale was in March. The foal-getting qualities of the horse could not be tested until late in the season of that year. If in the meantime a ringbone or spavin or other defect should come upon the horse, or he should have any distemper or sickness common to horses, without any fault on the plaintiffs' part, and perhaps from causes existing before the sale, the vendors might refuse to receive the horse back, though the defect may have had no relation to or effect upon his value for the purposes for which he was sold, in which case the purchasers would have no benefit from the warranty. There is a

provision in writing filled into the blank which shows quite clearly that the vendors intended to have it in their power to take advantage of any slight defect or ailment whatsoever in the horse arising after the sale, though it should have no relation to his qualities as a foal getter. That provision is this, that:

"In case this horse is returned on account of not being a reasonable foal getter, a lump on inside right fore leg, and below the knee, shall not be considered a blemish and reason for not taking him back, as a small injury appears there now."

If he did not prove to be a good foal getter, which could not be tested until one season had elapsed, and could not be returned on account of some small blemish not affecting materially his value, which rendered him in not so good a condition as at the time of the sale, the warranty would be of no appreciable value, if there were no remedy for a breach except to return the horse. Such a result, considering the language used, could hardly have been in the contemplation of the parties. The motion for a new trial is denied.