KESTER BROTHERS v. MILLER BROTHERS.

*Contract—Sale of Engine—Breach of Warranty—Counter-claim—Damages for Loss of Time—Interest.*

1. Where there is a breach of warranty as to the quality of an article sold the purchaser may reject it and sue for damages sustained by the non-performance of the vendor's contract, or he may keep it and set up, by way of counter-claim against the vendor's action for the purchase price, the breach of warranty in reduction, in which case the measure of damages is the difference between the contract price and the actual value.

2. Plaintiffs sold to defendants an engine with warranty as to its quality, and upon the appearance of a defect agreed to remedy it and insisted upon the defendants' keeping and oper-

ating the engine until it should be put in satisfactory running order, at which time the balance of the purchase price should be paid. During the time the plaintiffs were attempting to remedy the defects, defendants suffered loss by reason of idle labor and the consumption of extra fuel; *Held*, in an action by the plaintiffs to recover the balance of the purchase price, that the possession of the engine by the defendants not being the exercise of a legal option to keep it and to set up a breach of contract in damages but being at the instance and for the benefit of plaintiffs, the defendants are entitled upon their counter-claim to a credit for the loss to which they were subjected while plaintiffs were endeavoring to remedy the defects.

3. Where, in the trial of an action for the contract price of an engine which the defendants had retained and used at the instance of plaintiffs while the latter were endeavoring to remedy defects, the defendants set up as a defense the breach of warranty as to quality, it was proper, upon the verdict of the jury for the actual value of the engine, to allow interest on the same from the time the engine was delivered and first set in operation.

CIVIL ACTION, tried before *Brown, J.*, and a jury, at January Term, 1896, of FORSYTH Superior Court. The nature of the action and the facts are fully stated in the opinion of Associate Justice MONTGOMERY.

*Messrs. Watson & Buxton*, for plaintiffs.

*Messrs. Jones & Patterson* and *A. E. Holton*, for defendants (appellants).

MONTGOMERY, J.: The plaintiffs sold with a warranty as to quality and finish to the defendants an engine of a certain description, and delivered the same. There appeared a defect in the machine after it was put in operation and complaint was made to the plaintiffs. The plaintiffs agreed to remedy the fault and began the work. Upon the payment to the plaintiffs on August 7, 1893, the plaintiffs executed to the defendants a receipt expressed as follows:

" Received of Miller Bros. three hundred and eleven

dollars and 97-100, part payment on engine and boiler, balance of $1.638.07 to be paid when engine and boiler are made to run satisfactorily.

"(Signed) KESTER BROS."

It was in evidence that the plaintiffs continued from time to time between May 1, 1893, and 15th October, 1894, as they were called on by the defendants, to work on the engine to remedy the defect. After the last-named date they demanded the balance due. It was in evidence that during all the time in which the plaintiffs were at work on the engine they were insisting that the defendants would retain it and that they would continue to try to remedy the knocking (the defect complained of). The work and improvements put upon the engine by the plaintiffs under their agreement of August 7, 1893, made no great change in the condition of the machine.

On the 15th day of October, 1894, the plaintiffs brought this action to recover the purchase price of the engine less the amount paid on the 7th August, 1893. The defendants by way of counter-claim averred that they had been greatly damaged, during the time the plaintiffs were trying to remedy the defect in the engine, by loss on account of their hands being idle and by the increased amount of fuel consumed, made necessary by operating the engine with the defect. They also averred that they had never accepted the machinery as a full performance of the plaintiff's contract; that the engine did not come up to the warranty and description. The issues raised by the pleadings were submitted without exception from either side. The jury found the difference between the contract price and the actual value of the engine to be $450. They also found that the defendants' damages on account of idle labor were $200 and for extra coal consumed by the engine $150. His Honor reserved the question as to whether the defend-

ants were entitled to damage for idle labor and extra coal, and upon the jury finding for the defendants for these items he held as a matter of law that the defendants were not entitled to the recovery. The judgment was rendered by his Honor for the contract price, $1,950, less the amount found by the jury to be the difference between the contract price and the actual value of the engine ($450,) less the $100 found by the jury as damages by reason of the plaintiffs' failure to supervise and properly put up the masonry and work necessary to set the machine in position, and less the payment made on August 7, 1893, with interest on the balance, $1,088.03. The defendants filed exceptions to the judgment as follows :

" 1. That the court erred in not giving defendants credit for the sum of $350, on account of idle labor and extra coal, as assessed by the jury.

" 2. That the court erred in allowing interest to the plaintiffs prior to the issuing of the summons, the plaintiffs never abandoning their efforts to remedy the defects in the machinery until that time.

" 3. That the court committed error in rendering any judgment against defendants upon the admitted receipt of August 7, 1893, and upon other evidence in the case."

We will discuss the first exception. The defendants, when they discovered the defect in the engine, had the right to reject it and bring an action against the plaintiffs for such damages as they had sustained by reason of the plaintiffs' non-performance of the contract, if they chose so to do, or they could have kept the engine and set up by way of counter-claim against plaintiffs' demand for the contract price the breach of warranty in reduction. *Cox v. Long*, 69 N. C., 7 ; *Lewis v. Rountree*, 78 N. C., 323. And the true measure of damage would have been the difference

between the contract price and the actual value. This rule in principle was decided in *Spiers* v. *Halstead*, 74 N. C., 620. His Honor's instructions to the jury on this point were to that effect, and no exceptions were made to it on either side. And if this were all in the case the rejection by his Honor of the defendants' claim for idle labor and extra coal would have been proper. But another element enters into the transaction. It is to be remembered that all the while the defendants were complaining of the defect in the engine, and the plaintiffs were trying to remedy it, and the defendants were having their hands idle and consuming extra coal. The plaintiffs in the beginning insisted, and were insisting, that the defendants would not reject the machine but keep it and let them continue to try to remedy the fault. This course of the plaintiffs caused loss to the defendants. The plaintiffs, for their own benefit, that they might not have the engine returned to them, induced the defendants to keep it and to operate it while they were at work on it, at a loss to the defendants. Under these circumstances possession of the engine was not a legal option of the defendants to keep it and set up a breach of contract in damages, but the possession was at the instance of the plaintiffs and for plaintiffs' benefit, as we have said. It was insisted here upon the argument that if the defendants could by law recover damages on account of idle work and extra fuel, such damage might be indefinitely claimed, and as a consequence might amount to as much or more than the contract price of the engine. This is true, and ought to be the rule, for as long as the plaintiffs insisted on the defendants' keeping the engine, they, the plaintiffs, promising that they would make it satisfactory and remedy the defect, cannot be heard to say that they are not answerable to the defendants for loss they might subject him to by reason of their course. The

contract not having been performed by the plaintiffs they, instead of forcing the defendants to make the option of receiving the engine and holding them liable for the difference between the contract price and the actual value or reject it, chose to induce the defendants to keep the engine and operate it while they were engaged in trying to put it in the condition guaranteed in the sale. If they saw fit to continue this attempt to remedy the defect, it was at their risk and on their own responsibility, and that responsibility continued as long as they without success tried to put the engine in a satisfactory condition. We are of the opinion, therefore, that the court erred in holding, on the verdict of the jury, that the defendants were not entitled to the $350 found by the jury as the damage which the defendants had sustained on account of idle hands and extra fuel.

There is no merit in the second exception. The judgment gave the plaintiffs interest, not on the amount of the contract price, but on that amount less the $450, difference between the contract price and the actual value, and $100, on account of the failure of the plaintiffs to properly construct the masonry in which to place the machinery. The defendants have had the use of the plaintiffs' property all the time. If it appeared in the record at what particular dates the extra fuel was furnished and the loss on account of idle labor occurred, we might adjust the matter of interest on $350, which was embraced in the judgment of the court below, but as that does not appear we can make no order.

The third exception cannot be sustained. The defendants kept and used the engine after the plaintiffs had ceased to try to correct the defect, after demand made for payment and after action brought, and were using it at the time of trial. They will not, therefore, be allowed to keep the

property and then refuse to pay for it its actual value. The evidence shows that after the plaintiffs had ceased work on the engine, the defect not having been remedied, they continued to operate it without any loss on account of idle hands and extra fuel, and that it did all the defendants' work properly. This seems to be strange, but we cannot alter or change the findings of the jury. The judgment below is affirmed, except that it ought to be credited with the $350 found by the jury to be the defendants' damages on account of the items of loss of labor and consumption of extra coal by the engine.

Modified and Affirmed.