ALLEN v. TOMPKINS.

(Filed October 18, 1904).

1. SALES—*Contracts—Guaranty.*

  Where, in a sale of machinery, the contract is that the seller shall
    replace any defective machinery, the purchaser is not entitled
    to recover for a breach of the contract on account of defective
    machinery, in the absence of any request for new machinery.

2. SALES—*Contracts.*

  In an action for damages because of defective machinery, the pur-
    chaser is not entitled to recover the value of the excessive use
    of raw material caused by the defects, where the contract pro-
    vided that any defective machinery would be replaced by new
    machinery.

ACTION by Allen Bros. & Ford against the D. A. Tompkins
Company, heard by *Judge G. S. Ferguson* and a jury, at Oc-
tober Term, 1903, of the Superior Court of FRANKLIN
County.

The defendant, a corporation doing business at Charlotte,
N. C., sold to the plaintiffs certain machinery to be used in
the manufacture of oil from cotton seed and had the same
carried to the premises of the plaintiffs in the town of Louis-
burg, N. C. The contract of sale was entirely in writing,
and it contained a guaranty on the part of the vender that the
machinery and its equipment should be first-class in its ma-
terial and workmanship, and could work well for the pur-
poses intended if properly used. The plaintiffs made the
cash payment and executed their notes for the deferred pay-
ments to the defendant. The plaintiffs have brought this
action to recover damages of the defendant, the cause of ac-
tion being as set out in the complaint substantially as fol-
lows: The machinery when first put in motion by servants
of the defendant was found to be defective in two particulars;

the crusher rolls and the separator refused to do their work; the cash payment was made and the notes of the plaintiffs to defendant for the installments were given upon an agreement between the agent of defendant and plaintiffs that the machinery should be put in good condition and do its work effectively before he left it, and that as an inducement to the plaintiffs to accept and operate the machinery the defendant agreed that it would make the machinery satisfactory before it quit working on it, and that the defects complained of would disappear when the machinery became smooth from use. The defendant failed to make the machinery conform to the warranty before it quit working on it as it agreed to do, and the defects did not disappear when the machinery became smooth from use. The plaintiffs continued to operate the machinery after they discovered its defects and that it was not doing good work, because of the assurance of the defendant that it would make the machinery satisfactory before it would quit work on it and that the defects would disappear when the machinery would become smooth from use. While the defendant was at work upon the machinery under its contract, and while the plaintiff was operating it, great losses occurred to the plaintiffs in the output of oil and meal by reason of waste in the kernel of the cotton seed which went off with the hulls; in idle labor, extra fuel and money expended for repairs.

The defendant in its answer averred that the contract was complied with in all respects, and that the loss, if any accrued to the plaintiffs, was by reason of their failure to skillfully handle the machinery, and that the cash payment was made and the notes for the deferred payments given by the plaintiffs unconditionally and in full acceptance of the machinery after it had been properly tested. From the judgment both parties appealed.

PLAINTIFFS' APPEAL.

*W. H. Yarborough, Jr.,* and *F. S. Spruill,* for the plaintiffs.

*T. W. Bickett* and *Burwell & Cansler,* for the defendants.

MONTGOMERY, J., after stating the case. In the ordinary case of a sale of machinery with a warranty as to material and quality, if the purchaser discovers, when delivery is offered, defects in the same, he may reject it and have his action against the vender for such damages as he may have sustained by reason of the vender's non-performance of his contract; or he may keep the machinery and set up, by way of counter claim against the vender's demand for contract price, the breach of warranty in reduction. *Cox v. Long,* 69 N. C., 7; *Lewis v. Rountree,* 78 N. C., 323; *Kester v. Miller,* 119 N. C., 475; *Mfg. Co. v. Gray,* 129 N. C., 438, 57 L. R. A., 193. And the true measure of damage would be the difference between the contract price and the actual value. *Spiers v. Halstead,* 74 N. C., 620; *Kester v. Miller, supra.* In the present case, however, those rules for the assessment of damages for breach of such contracts are not applicable, for the reason that in section thirteen of the specification sheet which forms a part of the contract between the parties, a specific and particular method of remedying original defects in the machinery is agreed upon. The language of that section of the contract is as follows: "We guarantee all machinery and equipment to be first-class in material and workmanship, and to work well for the purposes intended if properly used. In case of original defects in any machine or part of machine, we agree to make good the defect by supplying a new machine or new part."

When the defendant then offered to deliver the machinery to the plaintiffs and demanded of them the cash payment and the notes for the other installments, the plaintiffs, before

using the machinery and making the payment, could have demanded of the defendant a refitting of the machinery by the furnishing of new crusher rollers and a new separator to be in good order and capable of doing the work required of them, and if those pieces had been furnished of such character the defendant's liability would have been at an end. That was the contract between the parties. No breach of the contract by which damage in money was in contemplation of the parties. Such an idea was excluded by the terms of the agreement. The plaintiffs' remedy was for new pieces of machinery. If the defendant had, upon demand for new pieces of machinery, refused to furnish them, then of course the ordinary rule would apply, and the plaintiff would have been entitled to collect such damages as reasonably flowed from a breach of the contract.

This action then is not for a breach of the original contract, but is for damages growing out of an alleged loss of profits through waste of material in the process of extracting oil and making meal, idle labor, extra fuel and money paid for repairs on the machinery, while the plaintiffs were operating the machinery when they knew it was defective and not doing good work, and before the defendant had properly cured the defects. The plaintiffs' counsel rely upon the case of *Kester v. Miller, supra,* to support their demand. In that case there was an agreement between the venders and vendees that the vendees should keep the machinery and operate it while the venders were undertaking to put it in good order so that it would do its work well. The agreement seemed to be like the agreement in this case. That case was tried below by *Judge Brown,* a lawyer of great ability and a Judge of long experience, and he held that the vendees, the plaintiffs, could not as a matter of law recover against the venders damages which they alleged they had sustained for unnecessary and extra fuel they were compelled to use while the venders were

engaged in repairing the machinery, nor for idle labor which
the vendees were compelled to keep in their business.   His
Honor's view no doubt was that when the vendees, knowing
what their remedy was when the machinery not coming up to
the guaranty was delivered, chose to make another agreement,
they should have protected themselves by saying, as it were,
to the venders, "if we agree to let you put this machinery in
good condition, in the condition you have warranted it to be
in the contract of sale, then you must make compensation for
any losses that we may sustain by reason of having to use
more fuel while you are at work than would be necessary to
supply a perfect machine, and to reimburse us for the value
of labor that we cannot discharge, but must keep around this
machinery and which must be idle at times, in the very na-
ture of things, while you are at your repairs."   This Court
thought differently and reversed the ruling of his Honor be-
low.   We thought there was an implied contract on the part
of the venders to make repayment to the vendees for such ex-
penses as had to be incurred by the vendees in the operation
of the machinery over and above what would have been neces-
sary if the machinery had been in good condition, for the
machinery had to be operated in order that the venders might
see its defects and then remedy them.   In other words, this
Court was of opinion that the conduct of the venders
amounted to a request of the vendees that they would furnish
extra fuel, and to keep his labor on the premises while the
repairs were being made.   In that case there was no demand
for any damages for injury to material used in operating the
machinery or for loss of profits in the diminished output.
We went as far in the case of *Kester v. Miller* as the Court
ought to go, and we are of the opinion in the present case
that his Honor was correct in holding, as a matter of law,
that the plaintiffs could not recover damages for the loss sus-
tained in oil and in cotton-seed meal, resulting from the in-

complete separation of the hull from the kernel of the cotton seed, as found by the jury in issues one and two as to damages. No such damages could have been in contemplation between the parties, and the law will not, upon the facts of this case, declare such damages to arise naturally from a breach of contract between the parties.

No Error.

WALKER, J., did not sit on the hearing of this appeal.
DOUGLAS, J., concurs in result only.