**MORRIS & CO., Inc., v. POWER MFG. CO.**

(Circuit Court of Appeals, Sixth Circuit.
March 10, 1927.)

Nos. 4661, 4662.

**1. Sales ⬅426—Provision of sale warranty that seller would repair or replace engine, or refund price if unable to make it work, held exclusive, and buyer not entitled to special damages.**

Provision of contract for sale of fuel oil engine, reciting that, if engine proved defective or incapable of doing work, seller would either repair or adjust engine so that it would perform work, or would replace it at seller's expense, or, if unable to make engine meet condition, take it back and refund part of purchase price paid, *held* to furnish exclusive remedy for seller's breach of guaranty, and buyer was not entitled to special damages in excess of amount paid.

**2. Appeal and error ⬅1002—Jury's finding on conflicting evidence cannot be disturbed on appeal.**

Finding of jury on conflicting evidence cannot be disturbed on appeal.

In Error to the District Court of the United States for the Western Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Action by Morris & Co., Inc., against the Power Manufacturing Company. Judgment for plaintiff, granting less relief than prayed, and both parties bring error. Affirmed.

Harold W. Fraser, of Toledo, Ohio (James Mercer Davis, of Camden, N. J., and Fraser, Hiett, Wall & Effler, of Toledo, Ohio, on the brief), for Morris & Co., Inc.

Frederick E. Guthery, of Marion, Ohio, and Edward W. Kelsey, Jr., of Toledo, Ohio (Guthery, Strelitz & Guthery, of Marion, Ohio, and Tracy, Chapman & Welles, of Toledo, Ohio, on the brief), for Power Mfg. Co.

Before MACK and MOORMAN, Circuit Judges, and DAWSON, District Judge.

MOORMAN, Circuit Judge. In December of 1919 Morris & Co. purchased from the Power Manufacturing Company a fuel oil engine under a quality and capacity warranty. The purchase price was $13,500 f. o. b. Marion, Ohio. The engine proved unsatisfactory, and Morris & Co., in March of 1924, brought this suit for damages, alleging that in August of 1922 it became convinced that the engine would not fulfill its guaranty, and that it then rescinded the contract and notified the defendant that it held the engine subject to defendant's orders. The amount which it sought to recover consisted largely of special damages, resulting, as it contended, to its

business of manufacturing. The Power Company denied liability and by counterclaim sought to recover the balance of the purchase price, with an expense of $670, which it had incurred in adjusting the engine to plaintiff's plant. The lower court held that the plaintiff could not recover a sum in excess of what it had paid on the purchase price, with interest. There was a judgment in its favor for that amount. Both parties prosecute error.

[1] In denying special damages the court held that the parties had agreed in the contract upon an exclusive remedy for breach of the guaranty—the replacement of the engine with one that would fulfill the guaranty, or, if defendant was unable to replace it, the refunding of the purchase price. The plaintiff complains of that ruling, contending that it had the option of pursuing that remedy, or resorting to any other that it had in law, such as a suit for damages. It cites in support of this contention: Eyers v. Haddem (C. C.) 70 F. 648; Northwestern Tire Co. v. Tire Corporation, 125 Wash. 84, 215 P. 360; Bremer v. Stone, 89 Or. 360, 171 P. 569, 174 P. 152; Detwiler v. Downes, 119 Minn. 44, 137 N. W. 422, 50 L. R. A. (N. S.) 753. Some of the cases upon which defendant relies in opposing it are: Walters v. Akers, 101 S. W. 1179, 31 Ky. Law R. 259; Crouch & Son v. Leake, 108 Ark. 322, 157 S. W. 390, 50 L. R. A. (N. S.) 774; Herbrand Co. v. Steel Co. (6 C. C. A.), 280 F. 11; The Nuska (D. C.) 300 F. 231; Creamery Co. v. Godfrey, 176 Mich. 109, 142 N. W. 362, 50 L. R. A. (N. S.) 805; Allen v. Tompkins, 136 N. C. 208, 48 S. E. 655.

Other questions that suggest themselves are whether without any limitation of remedy, special damages such as plaintiff claims could be recovered; and, if the remedy provided was merely cumulative, as plaintiff contends, whether there was an election by plaintiff, when it rejected the engine, to pursue that remedy. These, however, are contingent upon the first-mentioned question; and in determining that it is not necessary to analyze the cases cited, since it is admitted, as they indeed hold, that the parties to a contract have the right to agree, in express terms or otherwise, upon an exclusive remedy for its breach. Whether there was such an agreement here is a matter of interpretation.

The original contract provided that the machinery should be free from latent defects in material and workmanship, "and should any part of it be found, within one year from the date of shipment, to have been defective at the time furnished, we [seller] will re-

pair said part f. o. b. our works, or will furnish, without charge, f. o. b. our works, a similar part to replace it"; that "we [seller] shall not be held liable for damages on account of any delays caused by defective material"; and "however, because of demands sometimes made for alleged consequential damages of various kinds, such as loss in operating plants, failure to realize anticipated profits, or the saving in fuel consumption, etc., it is agreed that we shall not be held liable for any such damages growing out of or due to any delays." These provisions excluded damages resulting from delays caused by latent defects in material and workmanship, as well as those resulting from delays in delivery of the machinery.

The guaranty was that the engine should be "free" from defects in material and workmanship for 12 months following shipment, and, should any part of it within that time prove defective, the seller would "furnish and deliver f. o. b. Marion, Ohio, a new part to replace it, provided the defective part" was returned to the seller, transportation charges prepaid. There was a further guaranty that the engine had been thoroughly tested, and that, if its power was questioned within 30 days after starting, the seller would furnish a brake test to the satisfaction of an expert mutually agreed upon, and "if the engine fails to develop the horse power sold for, we will supply one that will, at our expense; if it does develop the horse power claimed, then the purchaser shall pay all the expenses of the test," etc.

The plaintiff's proof tended to show that the engine did not meet the guaranty in two respects: First, that it had defective parts; and, second, that it was incapable of sustained operation at the horse power it was warranted to have. The original guaranty covered both; as to the parts it was for 12 months, but as to power it was limited to 30 days from the date of the starting of the engine. In a letter of December 17, 1919, plaintiff expressed lack of confidence in the engine, and asked for a guaranty, to the effect that if for any reason the engine did not give satisfactory service for 30 days, "or should develop qualities that were going to prove unsatisfactory in running it day and night at least 21 or 22 hours in the 24, you would remove same, free from all expense to us, and refund us such moneys as had been paid." The defendant replied, guaranteeing that the engine was capable of driving a generator continuously 21 hours a day, provided operating conditions were favorable, and "if, within 30 days from the time the erect-

ing engineer reports to you that he is ready to operate the engine, there is any question about the engine's ability to so operate, we [seller] will either repair and adjust engine shipped, so that it will perform this service, or we will replace the engine, all at our expense, or, if we are unable to make the engine meet this condition, we agree to take back such equipment as we have furnished and refund such part of the purchase price as you have paid."

This was a broader guaranty than the original contract gave, and seems quite as broad as that asked by the purchaser in its letter of December 17th. The plaintiff claims that the erecting engineer never reported to it that the engine was ready to operate, and that the 30 days in which it could reject the engine if it failed to fulfill the guaranty had not expired when it notified defendant of its intention to rescind the contract and that it was holding the engine subject to defendant's order. It further claims that the engine was never capable of doing the work, and it is mainly on that ground that it seeks damages.

The contract does not say in terms that, in the event the engine proved defective or incapable of doing the work, the plaintiff should have no other remedy than the right to require the seller to replace it or take it back and refund the purchase price. It does, however, specifically provide in that contingency for replacement by an engine that would meet the requirements or for a refund of such part of the purchase price as had been paid. It thus provides for the doing of certain things as the specific remedy available to the buyer and enforceable against the seller for a breach of the guaranty. This was agreed upon after thorough consideration of all the terms of the contract, and because of plaintiff's dissatisfaction with the original guaranty, including the measure of liability. It seems clear to us that it was intended to be exclusive.

[2] The counterclaim was asserted upon the theory, of course, that the guaranty was fulfilled, and upon the further ground that, as plaintiff did not question the efficiency of the engine within the time fixed therefor in the contract, it treated the contract as executed by defendant and was therefore liable for the balance of the contract price. On these issues the proof was conflicting. There was evidence showing that the engine was incapable of doing the work it was warranted to do; also that the erecting engineer never reported the engine ready for operation, and consequently the 30-day period within which the plaintiff had to notify the defendant that the

engine would not perform the work, not only had not expired, but had not begun to run, when plaintiff notified the defendant that the engine was unsatisfactory, and that it was being held subject to the defendant's order. The jury evidently found against the defendant on these issues. We have no authority to revise its findings.

Judgment affirmed.