## THE EDENTON-MACKEYS FERRY COMPANY v. FAIRBANKS-MORSE AND COMPANY.

(Filed 21 October, 1931.)

**Sales H d—Held: seller waived conditions as to replacement of defective parts and acceptance of machinery and buyer could recover damages.**

Where the contract for the sale of machinery provides that in case any part is defective the seller should replace it with other suitable parts, and that the acceptance by the buyer of any part should be a waiver of damages due to delay and that the seller should be liable only for the rental value of other parts, and in the buyer's action thereon the seller's evidence is to the effect that the buyer, although aware of the defects of the machinery and that it did not come up to specifications, failed to demand replacements and accepted the machinery and paid the purchase price, and the buyer's evidence discloses that the agents of the seller sent by it to adjust the matter, promised that "everything would be adjusted satisfactorily," *Held:* the representations of the agents of the seller inducing the payment of the purchase price amounts to a waiver of the stipulations as to replacement of defective parts and as to the acceptance of the machinery, and the buyer may recover his damages under the rules for assessment of damages in such cases, and a verdict in the buyer's favor in accordance therewith will be upheld.

CIVIL ACTION, before *Stack, J.,* at April Term, 1931, of CHOWAN.

The plaintiff was the owner of a certain motor vessel known as "Shady Side," and said vessel was used in conducting a ferry between Edenton and Mackeys. In October, 1926, the plaintiff was in need of a certain engine and equipment for said vessel and entered into negotiations with the defendant for the purchase of necessary machinery. On 12 October, a written contract was entered into between the parties, in which contract the defendant agreed to furnish and deliver to the plaintiff a one-hundred-horsepower used engine, with propeller equipment and air tank. The defendant agreed to deliver the machinery at Elizabeth City "when notified, but said date of delivery is not guaranteed by the company." The written contract contained the following clauses: "The machinery and materials herein specified are guaranteed by the company to be well made of good material, and in a workmanlike manner. If any parts of said machinery herein proposed to be furnished, or hereafter furnished in compliance with the provisions of this paragraph, fail, through defect in material or workmanship, within one year from the date of shipment thereof, respectively, the company shall replace such defective parts, free of charge; . . . but the company shall not be liable for repairs, or alterations, unless the same are made with its written consent and approval. The company shall not be liable

for damages or delays caused by such defective material or workmanship, and it is agreed that the liability of the company under all guarantees, either expressed or implied, is specifically limited to the replacement free of charge, f.o.b. its factory, of parts failing, through defect in workmanship or materials, within the time and in the manner aforesaid. Parts claimed to be defective are to be returned by the purchaser to the company, at its option, transportation prepaid." It was further provided in said contract "that the company shall not be liable for any damages due to delay in delivery caused by fires, strikes, combinations of labor, or other causes beyond its control, and the receipt upon arrival of any part of said machinery and materials shall constitute a waiver of any claim for damages due to any delay. Should the purchaser, because of delayed delivery, be held to have justifiably declined to receive said machinery or materials upon arrival, any damage due to such delay shall be measured solely by the rental value of similar machinery for the period of the delay, and the company's liability shall, in no event, exceed such amount," etc.

The plaintiff offered evidence tending to show that negotiations were entered into with the "manager of the marine department" of defendant and the general agent of defendant at Wilson, North Carolina, and that in response to a telegram, dated 2 October, addressed to the defendant, Mr. Hill and Mr. Cross, agents aforesaid, came to see plaintiff and informed it that the defendant had at Elizabeth City, ready for immediate use, engine, propeller, stuffing box, shaft and all equipment which plaintiff desired to purchase. Plaintiff further offered evidence that it was disclosed to the agents that it was the owner of the vessel named Shady Side, and that such equipment was necessary for said vessel, and that thereafter, to wit, on 1 November, 1926, it notified the defendant that it would be ready to install the engine within ten days. Plaintiff further offered evidence that the agents of defendant were informed that the boat should be ready not later than 1 December, and that plaintiff had a boat chartered and was compelled to pay $50.00 per day for the use thereof in making the schedule. The agents of defendant assured plaintiff that as the engine and other equipment was in Elizabeth City, it would only require a few days for their mechanic to put it in first class order. Plaintiff further offered evidence tending to show that when the defendants, in response to the notice, undertook to install the machinery in the boat they found that the equipment was not in Elizabeth City, and thereupon the defendant undertook to furnish to the plaintiff a propeller wheel, a shaft and a stuffing box. These three items of equipment, which are part of the propeller equipment and belong to the engine, were too small. The defendant sent one of its engineers to

install the equipment and the evidence tended to show that this engineer stated that the equipment furnished by the defendant was unsuitable and could not be used. The shaft was eight inches too short, and the defendant purchased other equipment, and the same was installed in the boat on or about 10 January, 1927. The plaintiff offered evidence tending to show that it was compelled to pay $50.00 per day for a boat to run the schedule until 10 January, 1927, and thereafter it was compelled for a period of ten days to pay the sum of $75.00 per day for a suitable boat. On cross-examination the agent of plaintiff testified: "We knew the wheel was too small, and that the stuffing box was too small, and that the shaft was too short. We knew all conditions then, and knowing these conditions we paid everything we owed to the defendant, fifteen notes aggregating the balance of the purchase price of the engine." In explanation of why payment was made under the circumstances, the witness said: "I had the assurance of Mr. Hill and Mr. Cross that everything would be adjusted satisfactorily to us. That everything would be taken care of. It was put in there wrong; it was shipped wrong. . . . In December, 1926, and prior thereto they had told me with reference to the propeller wheel and shaft that these matters would be adjusted. They told me so afterwards when we had to buy them. . . . After a lot more breakdowns Mr. Cross came across the ferry and assured me everything would be taken care of satisfactorily. This was as late as 1929."

Issues were submitted to the jury as to the execution of the contract, the breach thereof, and damages. These issues were found in favor of plaintiff and damages awarded in the sum of $1,825 with interest.

From judgment upon the verdict the defendant appealed.

*Ehringhaus & Hall and L. E. Griffin for plaintiff.*
*M. B. Simpson and McMullan & McMullan for defendant.*

BROGDEN, J. The defendant resists recovery, chiefly upon two grounds:

1. That the contract provides that the defendant "shall not be liable for damages or delays caused by such defective material or workmanship, and it is agreed that the liability of the company under all guarantees, either expressed or implied, is specifically limited to the replacement free of charge, . . . of parts failing, through defect in workmanship or materials, within the time and in the manner aforesaid."

2. That the contract provides that "the company shall not be liable for any damages due to delay in delivery caused by fires, strikes, combinations of labor, or other causes beyond its control, and the receipt upon arrival of any part of said machinery and materials shall consti-

tute a waiver of any claim for damages due to any delay. Should the purchaser, because of delayed delivery, be held to have justifiably declined to receive said machinery or materials upon arrival, any damage due to such delay shall be measured solely by the rental value of similar machinery for the period of the delay, and the company's liability shall, in no event, exceed such amount."

These grounds of resistance to recovery are based upon the testimony of the agent of the plaintiff to the effect that, although plaintiff knew that the propeller wheel, the shaft and the stuffing box delivered by the defendant were too small, still no request or demand was made upon the defendant to supply such equipment with other equipment suitable for the purposes contemplated by the parties. The testimony for plaintiff further disclosed the fact that, although it knew of the failure of the defendant to furnish materials contemplated by the contract, nevertheless it accepted and paid the purchase money for the engine.

The plaintiff, however, contended and offered evidence tending to show that the propeller wheel, the shaft, and the stuffing box were parts of the propeller equipment of the engine, and that without the propeller equipment in controversy the boat could not be operated. The plaintiff further offered evidence tending to show that assurances were given it by the general agents of defendant that the defendant "would arrange all matters satisfactorily." The exact language of witness for plaintiff was: "I had the assurance of Mr. Hill and Mr. Cross that everything would be adjusted satisfactorily to us; that everything would be taken care of. . . . In December, 1926, and prior thereto, they had told me with reference to the propeller wheel and shaft that was there, that these matters would be adjusted. They told me so afterwards when we had to buy them, just before the boat left the railway, the latter part of December or January." The evidence further disclosed that the defendant furnished an engineer or mechanic to install the equipment, and that said engineer informed the defendant that the equipment complained of could not be used in the boat.

These contentions and the evidence supporting them raise the legal question as to whether the assurances of adjustment given by general agents of the defendant after the controversy arose warranted the submission of the case to the jury. A contract substantially similar to the one involved in this case was discussed and construed in *Fairbanks v. Supply Co.,* 170 N. C., 315, 86 S. E., 1015. In that case the Court remarked: "Contracts like this one are somewhat one-sided and should not be too strictly enforced in favor of the seller, but with some regard to the just rights of the buyer." Declaring the law applicable to the facts, the Court said: "It will be found that, in most of the above cited

cases, the courts held that such a transaction as the one here between the agent of the seller, who is specially commissioned to adjust the matter of controversy between the parties, and the buyer, by which, upon representations and promises that the machine will be put in good or satisfactory working order, the agent obtains the notes for the price, will amount to a waiver of the stipulation as to supplying new parts for those proved to be defective or for a return of the machine, and enable the buyer to recover his proper damages to the extent he has been injured and within the well settled rules relating to the assessment of damages in such cases." *Kester v. Miller,* 119 N. C., 475, 26 S. E., 115; *Allen v. Tompkins,* 136 N. C., 208, 48 S. E., 655.

In the case at bar the plaintiff offered evidence tending to show that defendant, in response to a telegram sent by plaintiff on 30 November, 1926, replied: "Our Mr. Hill expects to be in Edenton tomorrow and will discuss this matter in person with you," and that thereafter the general agents of the defendant from time to time gave assurances that "everything would be adjusted satisfactorily." This testimony and other testimony of like tenor bring the case squarely within the principles of law announced in *Kester v. Miller* and *Fairbanks v. Supply Co., supra.*

No error.