E. H. TAYLOR, JR., & SONS, Inc., v. FIRST NAT. BANK OF AURORA, IND.

(Circuit Court of Appeals, Sixth Circuit.    April 7, 1914.)

No. 2427.

1. BILLS AND NOTES. (§ 434*)—PAYMENT—RECOVERY.
    Where defendant, the maker of a note, voluntarily paid the same with
knowledge of an alleged defense of failure of consideration, the payment
was voluntary, and it was not entitled to claim the benefit of such pay-
ment as a set-off against other notes unpaid.
    [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1268–
1274; Dec. Dig. § 434.*]

2. NOTICE (§ 5*)—LAWS OF FOREIGN STATE.
    Where defendant, a Kentucky corporation, for many years had been
doing business with a cooperage company and plaintiff bank in Indiana,
defendant was charged with notice of the statutes of that state (Burns'
Ann. St. 1908, §§ 9071, 9072, 9073), under which a transferee of notes made
therein under specified circumstances takes no better title than his trans-
ferror.
    [Ed. Note.—For other cases, see Notice, Cent. Dig. §§ 3, 8–12; Dec. Dig.
§ 5.*]
    What law governs negotiability of bills and notes, see note to In re
Quality Shop, 125 C. C. A. 406.]

3. BILLS AND NOTES (§ 451*) — DEFENSES — FAILURE OF CONSIDERATION —
WAIVER.
    Where defendant executed a note in advance for the price of certain
cooperage to be manufactured and delivered by the payee, and after trans-
fer of the note to plaintiff before maturity, defendant, with knowledge
that the payee had become a bankrupt, voluntarily promised to pay the
note at the expiration of a specified extension, which had been granted,
such promise to pay on a new maturing date ratified the instrument, and
waived the defense of failure of consideration.
    [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1342,
1343, 1365, 1366; Dec. Dig. § 451.*]

In Error to the District Court of the United States for the Eastern
District of Kentucky; Andrew M. J. Cochran, Judge.

Action by the First National Bank of Aurora, Ind., against E. H.
Taylor, Jr., & Sons, Incorporated. Judgment for plaintiff, and de-
fendant brings error.    Affirmed.

This was an action at law to recover moneys alleged to be due from E.
H. Taylor. Jr., & Sons, Incorporated (called defendant herein). Judgment
was entered upon an instructed verdict, and defendant brings error. The
instructed verdict is so far dependent upon the issues presented by the
pleadings as to require a fuller statement of the pleadings than is usual,
in order to show, not only what the issues were, but how they arose.

The first cause of action as stated in an amended petition was for a balance
of $6,244.56; with certain interest alleged to be due upon a promissory note
of defendant dated August 18, 1910, executed and delivered at Frankfort,
Ky., payable in four months to the order of the Samuel Wymond Cooperage
Company, for $26,240, at the Farmers' Bank in Frankfort. It is alleged
that the Cooperage Company indorsed and transferred this note to the
plaintiff below, the First National Bank of Aurora, Ind. (herein called plain-
tiff or bank), before maturity, for valuable consideration, and that payments
were subsequently made to plaintiff by the defendant; one on December
15, 1910, of $6,214.82, and another on October 5, 1911, of $13,780.62. In the

second cause of action it was alleged that on September 7, 1910, the defendant executed and delivered at Frankfort another promissory note to the Cooperage Company, payable to its order, for $6,560, in four months after date at the Farmers' Bank before mentioned, that this note was likewise indorsed and transferred by the Cooperage Company to the plaintiff before maturity for valuable consideration, and that no part of the note had been paid.

The material parts of the answer, comprising three paragraphs, are, in substance, as follows: The first admits execution and delivery of both notes and the correctness of the sums alleged to have been paid on the first one; but payment is sought to be avoided through alleged defenses and also set-off and counterclaim against the Cooperage Company, all of which are alleged to be maintainable against the plaintiff. It is denied that the notes were executed or delivered at Frankfort, and it is alleged that this was done at Aurora, Ind.; and the authority of Wymond, as secretary and treasurer of the Cooperage Company, to indorse and assign the notes to the bank is denied for want of knowledge. It is alleged that at the time the bank acquired the notes the Cooperage Company was largely indebted to it, and that the notes were simply passed to its credit upon such pre-existing indebtedness; that the transfer of the notes to the bank was made in the state of Indiana, and, under a certain statute of that state set out in the answer, the bank acquired no better titles to or rights under the notes than the Cooperage Company itself possessed.

In the second paragraph it is alleged that the defendant in 1907 began a series of contracts with the Cooperage Company for the manufacture and delivery of large numbers of whisky barrels, and continued the same until shortly before the bankruptcy of that company in November, 1910; that it was provided by these contracts that no barrels were to be paid for until they were manufactured, and either stored in Aurora for account of the defendant, or delivered to it at Frankfort; that during this period the bank was the financial backer of the Cooperage Company, the president of that company being also the president of the bank and a director in each corporation, and Wymond, the secretary and treasurer of the Cooperage Company, being likewise a director in each corporation; that in order to aid the Cooperage Company further, it was agreed between it, the bank, and the defendant that the latter should deliver its "temporary notes" to the Cooperage Company in advance of the manufacture of the barrels, but that they were not to be paid until the barrels were actually manufactured and stored or delivered at Frankfort as stated; that the first note (for $26,240), although given to take up certain of these temporary notes, was in reality for the purchase price of barrels theretofore delivered to defendant during the season 1910–1911, to wit, 8,000 barrels; that on September 7, 1910, the defendant contracted with the Cooperage Company for 4,000 additional barrels, and delivered to the company two temporary notes of that date, each for $6,560, payable, according to their terms, one in three and the other in four months, but that they were not in fact to be payable until the barrels were manufactured and stored or delivered, when they were to be taken up by regular notes or acceptances; that one of these notes is the one sued on in the second cause of action; that, although there was a total failure of consideration therefor, the other note was presented for payment, with representation on the part of the bank that the barrels had been manufactured and stored; that the bank knew, and the defendant did not know, that this representation was untrue; that, believing it would either get the barrels for which the note was given, or could withhold a like sum against its unmatured paper then held by plaintiff, it paid the note, and "pleads the same as a set-off and counterclaim" against the balance "apparently" due on the first note.

In the third paragraph defendant refers to and makes part thereof the averments of its first and second paragraphs, and says, in further answer to the second cause of action, that the bank and the Cooperage Company knew, as early as the date of the note therein sued on (September 7, 1910). that the Cooperage Company was insolvent and wholly unable to manufacture the barrels for the amount of the two notes, and also knew the barrels would not be manufactured, but concealed these facts from defendant.

The first paragraph of the reply denies as follows: That either of the notes sued on was executed or delivered at Aurora; that either was not indorsed by the payee; that the Cooperage Company at the time of indorsement was largely indebted to the bank; that the proceeds of the notes were passed to the credit of the Cooperage Company upon any pre-existing indebtedness; or that the bank parted with nothing of value in the transaction. The second and third paragraphs of the reply are in terms answers to the set-off and counterclaim stated in the second and third paragraphs of defendant's answer. Plaintiff there admits that defendant and the Cooperage Company contracted through a course of years for the manufacture and delivery of large numbers of whisky barrels, including the contract of September 7, 1910, for 4,000 barrels, for which the two notes of that date were given, and one of which was paid and the other sued on; but plaintiff denies that an agreement was ever made concerning the giving of temporary notes, and plaintiff further and specifically denies the other averments relating to the set-off and counterclaim.

In the fourth paragraph of its reply, plaintiff alleges that on December 13, 1910, at defendant's request, and on its promise to pay at a later specified time, it granted an extension of time upon the second note sued on, according to a written memorandum then signed by the parties and set out in this paragraph of the reply; that this resulted in postponing payment of the second note ($6,560) from the date of its maturity (January 7, 1911) till February 20, 1911; that on February 17, 1911, at defendant's request, and on its promise to pay at a later time agreed on, plaintiff further extended the time for payment of the second note in suit from February 20th, as fixed by the first extension, until March 2, 1911; that defendant refused and still refuses to pay such second note in suit; that on the faith of these new promises of defendant the plaintiff did not make demand or protest against the Cooperage Company as indorser or its trustee in bankruptcy. Defendant moved to strike the fourth paragraph from plaintiff's reply, and also demurred to the same, and both were overruled. Plaintiff then filed a rejoinder to this paragraph, admitting the execution of the memorandum of December 13, 1910, but alleging, in substance, that it was induced to sign the same through representations of plaintiff's president that the Cooperage Company "was still in condition that it could probably resume business and manufacture the barrels," and further that plaintiff's attorneys advised defendant that the execution of the memorandum would not prejudice its rights, and defendant denied that plaintiff failed to protest the notes on the faith of such promises, and said that it, defendant, called plaintiff's attention to the necessity of proving such claim, and on its refusal to do so defendant made proof of the claim against the bankrupt's estate in such a way as to give either plaintiff or defendant the benefit of such proof "according to the result of the issue in this case." The rejoinder contains no denial of the second extension. Plaintiff demurred to the rejoinder, and the court sustained the demurrer. The parties then announcing readiness for trial, the plaintiff introduced "evidence * * * of the transfer and ownership of the notes sued on"; and, this being all the evidence offered by the plaintiff, it was agreed in open court that it "showed such ownership and transfer of said notes to the plaintiff." The defendant announcing that it had no testimony to offer, the court directed a verdict as stated.

B. G. Williams and Hazelrigg & Hazelrigg, all of Frankfort, Ky., for plaintiff in error.

John Galvin, of Cincinnati, Ohio, and H. D. McMullen, of Aurora, Ind. (McMullen & McMullen, of Aurora, Ind., and Galvin & Galvin, of Cincinnati, Ohio, of counsel), for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge (after stating the facts as above). [1] Examination of the statement will show that this case finally

presents but two questions: The first is one of voluntary payment; the second, waiver of alleged defenses. These questions concern the two promissory notes each for $6,560, which were given by the defendant to the Cooperage Company, September 7, 1910, to cover the price of 4,000 whisky barrels that the Cooperage Company then contracted to manufacture and subsequently deliver to the defendant. The Cooperage Company was adjudged bankrupt in the following November, and so failed to manufacture and deliver these barrels. Of these two notes, the one falling due in three months was paid by defendant at maturity, December 7, 1910, and this payment is made the basis of the set-off and counterclaim alleged and alone relied on to escape recovery of the balance admittedly owing on the note sued on in the plaintiff's first cause of action. It will be observed that this payment was made after the bankruptcy of the Cooperage Company, and it is neither alleged nor claimed that defendant was ignorant of that fact. True, defendant alleges that prior to the payment plaintiff had advised it that the barrels had been stored for defendant at Aurora, but this is distinctly denied in the reply. True, also, defendant alleged the existence of an agreement between the Cooperage Company and the plaintiff and defendant, in effect that such notes as these, including these particular notes, were temporary instruments, given for the accommodation of the Cooperage Company, and were not to be presented for payment until the barrels to which they related were either manufactured and stored at Aurora for defendant's account, or were delivered to it; but this, too, was met by express denial. In short, nothing was alleged that tended to excuse payment of this note at maturity that was not specifically denied; and yet defendant declined to offer evidence in support of any of its allegations, and so must be treated the same as if it had not made them. Further it was agreed in open court that the plaintiff's evidence showed transfer of the notes to and ownership thereof in the plaintiff. We are mindful of the omission of plaintiff to deny defendant's allegation that these notes were assigned to the plaintiff in Aurora, Ind., and also of the reliance of defendant upon a statute of Indiana (Burns' Revision of 1908, §§ 9071, 9072, 9073), which, it is in substance claimed, denied to plaintiff any better title to or right under the notes than the Cooperage Company had; but, if it were assumed that a good defense might thus have been available, it is hard to see how defendant could both pay the note and claim the benefit of the defense.

[2] Although defendant was a corporation of Kentucky, located at Frankfort, and of course under the general rule could not be presumed to know the law of another state (see, for example, Haven v. Foster, 9 Pick. [Mass.] 112, 129, 19 Am. Dec. 353), yet, concededly, it had for years been doing business with both the Cooperage Company and the plaintiff in Aurora, and so was bound, we think, to take notice of the laws of Indiana (Hill v. Spear, 50 N. H. 253, 261, 9 Am. Rep. 205); and, moreover, in view of such business relations, and of the well-known rule requiring a defendant to set up all the defenses it has, it is to be presumed that if defendant had not in fact

known of the existence of the Indiana statute at the time it paid the note, it would have so alleged; this was not done, nor is it even suggested that a mistake of fact concerning knowledge either of the existence or the meaning of this statute was made (Norton v. Marden, 15 Me. 45, 46, 32 Am. Dec. 132). As it seems to us, then, this portion of the case presents all the essential characteristics of a voluntary payment. As Mr. Justice Bradley said in Lamborn v. County Commissioners, 97 U. S. 181, 185 (24 L. Ed. 926):

"A voluntary payment, made with a full knowledge of all the facts and circumstances of the case, though made under a mistaken view of the law, cannot be revoked, and the money so paid cannot be recovered back."

See, also, Utermehle v. Norment, 197 U. S. 40, 56, 25 Sup. Ct. 291, 49 L. Ed. 655, 3 Ann. Cas. 520; Brisbane v. Dacres, 5 Taunt. 143, 151; Elliott on Contracts, § 1381, and citations.

[3] We come next to the second of these notes. This note has not been paid, and recovery upon it is sought. Bearing in mind what has thus far been said respecting the allegations of the answer and the denials of the reply, there would remain against the second note the defense that the barrels have not been delivered. However, it is further set up in the reply that upon defendant's requests, and its promises to pay at later specified times, plaintiff granted it two extensions of time respecting the payment of this note. The note as delivered was to mature January 7, 1911; and the first request was made and granted December 13, 1910, according to a written memorandum executed on that date, until February 20, 1911. February 17, 1911, the second request was made and granted, until March 2, 1911. The paragraph of the reply containing these allegations was met by a rejoinder admitting the execution of the memorandum of December 13, 1910, but alleging that defendant was induced to sign the same through representations of plaintiff's president and attorneys, which appear in the statement. We may lay the first extension and these alleged representations to one side, for (apart from the rule that would ordinarily exclude contemporaneous oral statements), the rejoinder contains neither denial nor allegation concerning the second extension; indeed, the request, promise, and extension, so alleged in the reply, were admitted by the defendant, as well by its motion to strike out the paragraph as by its demurrer thereto. The motion and demurrer were alike overruled; and here again is seen the effect of defendant's refusal to offer evidence. Under the pleadings it must be presumed that defendant was at this time familiar with all the material facts; if it could waive its defenses, it plainly did so here. The rule is that if one, with full knowledge of facts constituting a defense to his note, secures an extension thereof on the faith of his promise to pay it upon the new maturing date, he ratifies the instrument and so waives his defense. Mr. Justice Matthews had occasion to state the rule, and the reasons for it, in Fitzpatrick v. Flannagan, 106 U. S. 648, 660, 1 Sup. Ct. 369, 379 (27 L. Ed. 211):

"A subsequent promise, with full knowledge of the facts, is certainly equivalent to an original promise made under similar circumstances; and no one,

acting with full knowledge, can justly say that he has been deceived by false representations. 'Volenti non fit injuria.' "

See Kingman & Co. v. Stoddard, 85 Fed. 740, 746, 749, 29 C. C. A. 413 (C. C. A. 7th Cir.); Doherty v. Bell, 55 Ind. 205, 208; Brown v. First National Bank of Indianapolis, 115 Ind. 572, 578, 579, 18 N. E. 56; Tuttle v. Stovall, 134 Ga. 323, 330, 331, 67 S. E. 806, 20 Ann. Cas. 168.

The principle of these cases is analogous to that which is usually applied to the giving of renewal notes with full knowledge of the facts. Griffith v. Trabue, 11 Heisk. (Tenn.) 645, 650; Odbert v. Marquet (C. C.) 163 Fed. 892, 899, s. c. affirmed 175 Fed. 44, 99 C. C. A. 60 (C. C. A. 4th Cir.); Hogan v. Brown & Co., 112 Ga. 662, 37 S. E. 880; Franklin Phos. Co. v. Inter. Harvester Co., 62 Fla. 185, 190, 57 South. 206, Ann. Cas. 1913C, 1247; 1 Daniel, Neg. Inst. (6th Ed.) p. 302, and citations.

Thus, unless we misinterpret the pleadings, Judge Cochran was right in directing a verdict for the plaintiff. The notes are dated at Frankfort, Ky., are negotiable in form, and payable at a bank in Frankfort. They were offered in evidence, and, since they were admittedly transferred to and owned by the plaintiff, a prima facie case was made; this but emphasized the defensive character of the issues tendered by defendant and the need of supporting them by evidence.

The judgment is accordingly affirmed, with costs.