BIRD'S-EYE VENEER CO. v. FRANCK–PHILIPSON & CO.

(Circuit Court of Appeals, Sixth Circuit.   October 10, 1918.)

No. 3127.

1. Patents ⬡212(1)—Licenses—Implied Warranties.
   Conceding that the owner of a patent, which granted an exclusive license to defendant on payment of a royalty, impliedly warranted the commercial utility of the patent, yet where the parties, after defendant had been unable to make the patent commercially successful, entered into a new contract fixing their several rights, the implied warranty was waived, and the fact that the patent process did not prove a success is no defense to an action for accrued royalties.
   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Patent.]

2. Patents ⬡1—Nature of Patent.
   A patent is not inherently the grant of a right to make; it is a grant of the right to exclude others from the field.

3. Patents ⬡209(1)—Licenses—Failure of Consideration.
   Where there was no contention that the patents covered by license from plaintiff to defendant for a process for bleaching wood veneers were invalid, and the contract gave defendant an exclusive license to use the patent, with the right to grant licenses thereunder to others, the fact that the process did not become a commercial success is no ground for finding a total failure of consideration.

In Error to the District Court of the United States for the Northern Division of the Western District of Michigan; Clarence W. Sessions, Judge.

Action by Franck-Philipson & Co. against the Bird's-Eye Veneer Company. There was a judgment for plaintiff, and defendant brings error. Affirmed.

Wm. P. Belden, of Cleveland, Ohio, for plaintiff in error.
Thomas J. Hickey, of Chicago, Ill., for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

DENISON, Circuit Judge.   The Bird's-Eye Veneer Company was engaged in manufacturing veneer from bird's-eye maple logs.   So much of the product as came from the heart of the log was "off color," and would be much more valuable if it could be bleached.   The Veneer Company had never been able to find a satisfactory method of bleaching.   The Philipson Company owned patents upon a process for accomplishing this result.   The Veneer Company took a license under these patents and agreed to pay royalties.   After making payments for a time, the Veneer Company refused to pay further, and the patentees brought this action in the court below to recover the royalty then accrued.   For convenience, we designate the inventor and his first and second assignees collectively as "the patentees."   The defenses (so far as now important) were, first, that there was a breach of the implied warranty that the patented process would accomplish the purpose for

---

⬡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

which the Veneer Company took it; and, second, that the patented process was worthless, wherefore there was a total failure of consideration. Upon the trial, the District Judge held that, as matter of law under the evidence, neither defense could be maintained, and instructed a verdict in favor of the patentees. The present writ of error presents the question whether either defense should have been sustained by the court or submitted to the jury.

We conclude that we cannot consider or decide the abstract questions which have been presented as the main reliance of the Veneer Company. We express no opinion as to whether such a license for a patented process is within the provisions of the Uniform Sales Act, nor whether there may be an implied warranty of fitness attached to a written contract therefor, nor as to whether a patented process might be, in spite of the patent monopoly, so valueless that there would be a total failure of consideration for its sale. We think these questions are not open on the facts of this case.

The process involved certain chemical actions or reactions, and the obviously difficult problem of soaking very thin sheets of wood in a chemical solution, so as to get the good results desired and avoid all the bad results which might threaten. The representative of the Veneer Works in making the contract was an experienced and able manager, familiar with manufacturing costs and the demands of his market. He was at least upon an equal footing with the patentees in all respects except as to chemical knowledge, and he was better informed than the patentees as to matters affecting commercial success.

[1] The original contract was made in April, 1914. In consideration of a license to use upon bird's-eye maple veneers the process patented by one United States patent and by one Canadian patent and the method of a patent application then pending, the Veneer Company agreed to pay $5,000 in cash and $7,500 upon deferred notes and a license fee of $300 per month after installation. For all purposes now involved, the license was equivalent to an exclusive license, and we shall so treat it. It is not to be supposed that the manager of the Veneer Company would have made this contract—which was carefully written (covering eight pages of the printed record), and went into many details, but contained neither any warranty of the process or its results nor any provision whereby the Veneer Company could escape the continuing obligation—unless the success and the value of the process had been shown to his satisfaction, and the evidence indicates exhibition of samples, etc. Thereupon the Veneer Company, under the patentees' direction, constructed and installed elaborate apparatus, use of which was begun about July. After about six months of use, or attempted use, the Veneer Company expressed such dissatisfaction that the patentees sent an expert adviser, and the company and this adviser conducted a series of tests until about March, when, apparently, the company again became satisfied. It then had paid the down payment of $5,000, and one of the $2,500 notes and five of the $300 payments, and was in arrears on two of the notes, amounting to $5,000, and on seven of the payments, amounting to $2,100.

The parties then, in March, 1915, executed a new contract, reciting that the previous contract had been made, that certain disputes had arisen as to the amount of the license fees payable, and that the parties "are desirous of terminating the controversy, and have agreed to settle and terminate all their differences in regard to or in any wise growing out of the contract," and agreeing that the Veneer Company would pay the two unpaid notes of $5,000, and would pay $700 out of the unpaid monthly payments, and that the patentees would release the Veneer Company from the remainder. These payments were made and accepted. On May 1, 1915, the parties made a further contract by which the Veneer Company acquired the right to use the patents on veneers other than bird's-eye maple and the right to grant certain licenses under the patents to furniture manufacturers in the United States and Canada, and by which the Veneer Company acquired similar rights as to all future inventions and improvements in the process, to be made by the patentees. For these additional rights the Veneer Company agreed to pay the [minimum] license fee of $1,250 per year. The company then continued, until August, 1916, to pay regularly all license fees accruing under the original contract and under the May, 1915, contract, and continued to use or attempt to use the process. It then, in August, declined any further payments, and this suit resulted. There is (now) no claim of fraud or misleading or concealment by the patentees of anything known to them.

If there was an implied warranty of the character claimed by the company and at the time of the original contract, we cannot think that it survived the contracts of March and May, 1915, and the payments made pursuant thereto. The case is not one involving the later development of some inherent but unknown defect. In March and in May, 1915, when the new contracts were made, the company knew all about the failure of the process (if it had failed). It merely was hoping and believing that the defects had been overcome.

When the subject-matter of an alleged implied warranty has thus been a matter of discussion and negotiation, and a compromise settlement has been reached, and the parties have continued under the old contract, and then have made a further elaborate written contract with reference to additional rights in this same matter for additional compensation, and all without any expressed covenant or warranty, the continuance of the implied warranty is not affirmed by any precedent brought to our attention, or, as we think, by any principle involved. The situation is, in all respects, analogous to that existing where an article is sold subject to acceptance, and, after trial for the special purpose desired, is accepted and paid for, or where there are express representations as to quality, and, after knowledge of their falsity, payment is made without objection. In neither of these cases is there any remaining liability upon an implied warranty of fitness. Kellogg Co. v. Hamilton, 110 U. S. 108, 112, 3 Sup. Ct. 537, 28 L. Ed. 86; Taylor v. Bank (C. C. A. 6) 212 Fed. 898, 129 C. C. A. 418; Kansas City Co. v. Rodd (C. C. A. 6) 220 Fed. 750, 754, 136 C. C. A. 356; Marmet Co. v. People's Co. (C. C. A. 6) 226 Fed. 646, 651, 141 C. C. A. 402.

[2, 3] In order to demonstrate the correctness of the ruling of the trial court to the effect that the proof offered by defendant did not tend to establish a total failure of consideration, it is necessary to state only one reason. The other reasons urged may be passed by. The thing purchased here was an exclusive license under a patent. There is no claim, in the pleadings or in the offer of proof, that the patent was void. In view of the well-known distinction between that lack of patentable utility which makes a patent void and that lack of commercial utility which makes its exploitation not profitable until sufficient capital and skill are employed, or until market conditions are favorable, or until some improvements and refinements are discovered, and in view of the fact that defendant's counsel did not directly suggest the question of validity, we cannot accept the rather vague offer to show that the patented process was worthless to this company, or that this company was unable to make it work, as intended to present the issue of invalidity, and so we are not concerned with the reasoning or with the decisions upon that subject. As is familiar, and as we have had occasion to say, a patent is not inherently a grant of the right to make; it is a grant of the right to exclude others from the field. Swindell v. Youngstown Co., 230 Fed. 438, 442, 144 C. C. A. 580. By this exclusive license, as enlarged in May, the Veneer Company obtained, for the term of the patents, the right to exclude all its competitors from using this patented process, either in the form disclosed in the patent or by any improvement thereon which might be made by the patentees, or by any infringing improvement which might be made by others. The first claim of the patent is:

"A process for treating pieces of sap-containing wood, which consists in subjecting such pieces to the action of a bleaching gas-liberating solution acting to dissolve the sap, whereby decoloration and sap extraction are simultaneously effected."

This is, obviously, a broad claim. It is accompanied by 10 other claims, each in more or less broad and inclusive language. The proposition that the grant of exclusive rights for the United States and Canada under such a (valid) patent, which seems to control a considerable field of development and improvement for 17 years and to make tributary to it all improvements within the field, and the grant of similar rights in any improvements the patentees may make, do not constitute any consideration whatever for a promise to pay therefor, is a proposition which we think needs only to be stated to show its error.

We do not intend now to decide that the Veneer Company has no suitable remedy or defense, as against continuing or further asserted liability, if the patent is in truth void, because not involving patentable utility, or because it does not sufficiently disclose how to practice the process effectively. Neither the right to such remedy or defense, nor the effect thereon of the judgment in this case, is before us; but, upon the issues made and tried in this case, it was rightly held that the attempted defense failed.

The judgment is affirmed.