## HERBRAND CO. v. LACKAWANNA STEEL CO.

(Circuit Court of Appeal, Sixth Circuit. April 4, 1922.)

No. 3612.

1. **Sales** ⊛⇒445(6)—**Action for breach of warranty not barred as matter of law by payment of price.**

Retention of goods and payment of purchase price, or suffering judgment therefor without defense, and with knowledge of breach of warranty, does not as matter of law bar action for the breach; the question of waiver being at the most one of fact.

2. **Sales** ⊛⇒288(6)—**Payment for goods held not to bar action for breach of warranty under Ohio statute.**

Retention of goods and payment of purchase price with knowledge of breach of warranty did not bar an action for the breach, under the Uniform Sales Act of Ohio (Gen. Code, § 8395), in view of Gen. Code, §§ 8429, 8449.

3. **Sales** ⊛⇒445(6)—**Extension of time for payment does not show waiver of breach of warranty under Ohio statute.**

While the extension of time for payment for goods would furnish a good consideration for the waiver of action for breach of warranty, an extension does not as matter of law show such a waiver, under the Uniform Sales Act of Ohio (Gen. Code, § 8395, subd. 1), in view of Gen. Code, §§ 8429, 8449.

**4. Sales ⊙⇒445(6)—Waiver of action for breach of warranty held for jury under Ohio statute.**

In action for purchase price of steel, wherein defendant counterclaimed for damages for breach of implied warranty of fitness of steel previously purchased and paid for, whether defendant waived its right to damages *held* for the jury, under the Uniform Sales Act of Ohio (Gen. Code, § 8395, subd. 1) and Gen. Code, §§ 8429, 8449.

**5. Customs and usages ⊙⇒19(3)—Testimony as to custom held not conflicting.**

Cross-examination of witness, testifying to custom of replacement of defective steel or credit for its value, *held* not to create a conflict in the testimony, so that trial court would have been justified in instructing the jury that the custom was established by uncontradicted evidence; the cross-examination affecting only the weight of the testimony of the witness, other witnesses testifying to the custom.

**6. Customs and usages ⊙⇒7—Custom as to replacement of defective steel held not unreasonable.**

A custom in the steel trade, under which the buyer's only remedy for defective steel was replacement or credit for its value, at the buyer's option, the seller not being liable for cost of labor or other consequential damages, was not unreasonable.

**7. Customs and usages ⊙⇒10—Custom as to remedies of buyer held not to forbid recovery for failure to replace defective steel.**

A custom in the steel trade, under which buyer's only remedy for defective steel is replacement or credit for its value, at the buyer's option, the seller not being liable for cost of labor or other consequential damages, does not forbid recovery for failure to replace defective and unused steel, whose purchase price was greatly in excess of its scrap value; buyer having asked replacement, and seller having failed to make replacement.

In Error to the District Court of the United States for the Northern District of Ohio; John M. Killits, Judge.

Action by the Lackawanna Steel Company against the Herbrand Company. Judgment for plaintiff, and defendant brings error. Affirmed, on condition of remittitur.

Gustav Ohlinger and Alexander L. Smith, both of Toledo, Ohio (Smith, Beckwith & Ohlinger, of Toledo, Ohio, on the brief), for plaintiff in error.

C. M. Horn, of Cleveland, Ohio (Dustin, McKeehan, Merrick, Arter & Stewart and W. B. Stewart, all of Cleveland, Ohio, on the brief), for defendant in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. Plaintiff sued defendant for the price of a large quantity of steel bars sold to defendant in the year 1919. Defendant admitted liability therefor, but counterclaimed for alleged damages for an asserted breach of implied warranty of fitness of a large amount of steel bars purchased by defendant from plaintiff in the previous year (October 10, 1917) for use in the manufacture of elbow joints for Liberty motors. The damages claimed consisted of the difference between the invoice value of the defective steel and its scrap value ($4,605.15), together with expenses incurred by plaintiff ($16,927.50) in manufacturing the defective forgings.

Plaintiff denied generally the merits of defendant's claim, asserting

⊙⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

two affirmative defenses: First, payment by defendant in full for the steel after it knew or should have known of the alleged defects therein; and, second, that under a general custom existing in the steel trade, during and long prior to October, 1917, the manufacturer was not liable for the cost of labor or other expense incurred by the buyer in working defective steel, but that the latter's remedy with respect to reimbursement was limited to the replacement of the steel; that this custom was known to both plaintiff and defendant, and that the contract was made pursuant thereto and in recognition thereof.[1] At the close of the evidence verdict was directed for plaintiff.

It appeared by defendant's testimony that not exceeding 2 per cent. of the steel used by it during January, February and March, 1918 (and which had been shipped by plaintiff in the previous November and December to apply on the 1917 contract), was so seamy and unfit for defendant's purposes as to cause its discarding, either before or during the process of forging; that during the latter part of April or the first of May, 1918, from 8 per cent. to 12 per cent. of the steel used was likewise found to be seamy and unfit, and was so discarded by defendant; that in May as high as 30 per cent. to 40 per cent. was likewise found in the same unfit condition, and was likewise discarded by defendant, which used in the manufacture of its forgings steel not disclosing such unfitness during the forging process; that in the early part of May, 1918, defendant notified plaintiff that the steel was seamy and unfit for its purposes. It further appeared, without dispute, that after defendant discovered the seamy and unfit condition of the steel it paid plaintiff in full therefor, having during the latter part of May and early in June, 1918, asked plaintiff for an extension of time of payment for the steel received, on June 4, 1918, giving plaintiff trade acceptances for about three-quarters of the invoice value of the steel (which trade acceptances it later paid in full without complaint), and on or about June 21, 1918, paying in cash the remaining one-quarter of the price.

Verdict was directed upon the sole ground that defendant's right to complain of the defective steel was barred by its voluntary payment of the purchase price in full, with knowledge of the defects. The learned trial judge based this conclusion largely upon the decision of this court in Marmet Coal Co. v. People's Coal Co., 226 Fed. 646, 651, 141 C. C. A. 402, 407, wherein it was said:

"It is clear that defendant cannot be heard to complain of alleged misrepresentations with respect to barges for which it has paid with full knowledge of the alleged breach."

But the Marmet Case is not authority for the all-embracing proposition that, as matter of law, a purchaser waives right to complain of breach of warranty of fitness by the mere fact of payment with knowledge of the breach. The statement in the Marmet Case must be in-

[1] The statement of the second defense included an allegation that the contract contained an express agreement to replace and an express rejection of liability to claim for labor or damage. The record does not show that this allegation was established. The contract does not seem to have been produced, and it may have been by correspondence.

terpreted in connection with the peculiar facts stated in the opinion, including the considerations that until the suit was begun defendant had purposely refrained from complaining to the plaintiff of the condition of the barges purchased, and that its failure to pay in full was due only to lack of funds therefor. The question of notice of breach of warranty within a reasonable time after knowledge thereof was involved generally in the case. The headnote upon that subject manifestly relates to the concrete case.

Nor are the other decisions of this court relied upon by plaintiff authority for the general proposition invoked. Taylor v. Bank, 212 Fed. 898, 129 C. C. A. 418, did not involve a breach of warranty. The defense of failure of consideration was held waived by a voluntary promise to pay a purchase money note in consideration of a given extension thereof. In Birds-Eye Veneer Co. v. Franck-Philipson Co., 259 Fed. 266, 170 C. C. A. 334, a warranty of commercial utility was originally involved, but the pertinent holding was that such warranty was waived by the making of a new contract fixing the several rights of the parties. Lazarus v. Kessler (C. C. A.) 269 Fed. 520, involved no question of breach of warranty. The pertinent decision there was that a party who, under contract for the purchase of whisky at a stated price, received and paid for, without protest, successive shipments made after an additional war tax had been imposed, with knowledge that such tax was added to the price, was estopped from recovering the amount paid on the ground that the payments were compulsory. This holding was based on the familiar proposition that money voluntarily paid, with full knowledge of the facts cannot be recovered back.

[1-3] The instant case, however, is one of implied warranty within the Uniform Sales Act of Ohio (General Code Ohio, § 8395, subd. 1). Section 8429 provides that, in the absence of express or implied agreement acceptance of goods by the buyer shall not discharge the seller from liability in damages, or other legal remedy, for breach of any promise or warranty in the contract of sale,[2] but that "if, after acceptance of the goods, the buyer fails to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know, of such breach, the seller shall not be liable therefor." In the instant case no question of due notice of breach is involved, for previous to the giving of the acceptances plaintiff had been notified that the steel was seamy and unfit for defendant's purposes. Moreover, the act (section 8449) expressly gives to the buyer, in case of breach of warranty, an election of any one of four courses, two of which are pertinent here, viz.: First, to accept or keep the goods and set up against the seller the breach of warranty by way of recoupment against action for the price; and, second, accept or keep the goods and maintain an action against the seller for damages for breach of warranty. At the common law, as recognized by this court, the choice of remedies in case of breach of warranty given a buyer who does not disaffirm and rescind the contract are substantially (if not identically) the same as under section 8449 of the Ohio Code (Dods-

---

[2] Such was the common-law rule, recognized by this court. Carleton v. Jenks, 80 Fed. 937, 941, 26 C. C. A. 265.

worth v. Hercules Iron Works, 66 Fed. 483, 488, 13 C. C. A. 552); and previous to the enactment of the Uniform Sales Act it was the general, and we think the better, rule that retention of the goods and payment of the purchase price, or suffering judgment therefor without defense, and with knowledge of breach of warranty, did not, as matter of law, bar action for the breach—the question of waiver being, at the most, one of fact. Mechem on Sales, § 1836; [3] 24 R. C. L. § 515; [4] 35 Cyc. 433. [5] Upon the subject of waiver generally, see Williston on Sales, § 488, pp. 850–853. These propositions are amply supported by authorities. We cite in the margin a few of the many illustrative cases. [6] No reason is apparent why the same construction should not be put upon the code provision in question. Indeed, there is even greater reason for applying the rule of nonwaiver by payment under a statute expressly declaring that the warranty survives acceptance, and in connection with section 8449, expressly giving right to accept after knowledge.

We are cited to no controlling authority, and we know of none, which, as applied to the facts of this case, would forbid recovery from the mere fact of payment with knowledge of breach. While the extension of time of payment would furnish a good consideration for the waiver of action for breach of warranty, the record does not show, as matter of law, that such waiver was within the contemplation of either party. It would have been open to the jury to find the contrary. As already said, there was evidence that previous to giving the notes defendant had notified plaintiff of the seamy and unfit condition of the steel. It appears by plaintiff's evidence that on June 17, 1918 (which was subsequent to the giving by defendant of its trade acceptances, but prior to the payment in cash of the remainder of the purchase price), defendant, by letter to plaintiff's district sales manager, called attention to the seamy and unfit condition of portions of the steel, saying:

"In view of the fact that this will cause a shortage of steel when we are nearing completion of these orders, trust you will take this matter up immediately with us, and see what can be done in regard to replacing same."

This manager answered, asking for a statement as to when the steel was shipped, "so that this matter may be taken up and adjusted at once"; to which defendant replied, giving the numbers of the cars which contained the shipments in question. [7] It further appeared that

[3] "So the fact that the buyer may have paid the price, or given his note for it, however much it may bear upon the credibility of his complaints, does not debar him from recovering for a breach of warranty."

[4] "According to the better view, the fact that the buyer pays the price after notice of defects in the goods, constituting a breach of the seller's warranty, does not constitute a waiver of the breach so as to preclude him from maintaining an action therefor."

[5] "According to the weight of authority, payment, part payment, or the giving of notes for the purchase price, is not a waiver of a breach of warranty unless an intent to waive such breach is proven. * * *"

[6] Aultman v. Wheeler, 49 Iowa, 647, 649; Taylor v. Cole, 111 Mass. 363, 365; Gilmore v. Williams, 162 Mass. 351, 352, 38 N. E. 976; Osborne v. Marks, 33 Minn. 56, 60, 22 N. W. 1; Park v. Richardson, 81 Wis. 399, 403, 51 N. W. 572; Johnson v. Roy (C. C. A. 3) 112 Fed. 256, 257, 50 C. C. A. 237.

[7] The last shipment seems to have been made in May.

on July 1, 1918, the representatives of plaintiff and defendant met at the latter's plant, where plaintiff was shown some bars which defendant claimed to be seamy, also a pile of rejected forgings, which, there was evidence tending to show, was the steel which defendant did not use because defective, after which plaintiff's representative took up the matter with plaintiff, telling it that in his opinion some of the steel in question was seamy. There was also testimony tending to show that on or about that date plaintiff requested defendant to use such of the steel as it was able to use, and that defendant thereafter continued to do so. It also appeared, by defendant's testimony, that on August 21, 1918, defendant advised plaintiff that it had "some 20 tons of seamy bars, and 40 tons of forgings that were seamy, and wanted to know what we were going to do about it, and said that the Herbrand Company wanted it replaced" (there was testimony that this steel was the same shown plaintiff's representative in July); that defendant "said nothing about any claim for damages," or that plaintiff ought to stand the expenses of labor on the rejected forgings; that defendant was told (at what seems to have been the interview of August 21, 1918) that plaintiff's representative would take up the matter with his home office, which he at once did; that about September 1st thereafter defendant presented to plaintiff's representative a statement claiming damages, including "cost of defective material, labor cost, etc."; that this representative took up the matter with plaintiff, and wrote defendant that, on being advised of the tonnage of steel on hand claimed to be seamy and nonusable, the subject would be again taken up with plaintiff "with the idea of securing, if possible, replacement of the steel, but nothing farther."

[4] We think it clear that it was error to direct verdict for plaintiff because of defendant's payment of the purchase price.

The defense of custom remains. Its consideration by the trial judge became unnecessary, in view of the conclusion otherwise reached. Plaintiff presented testimony of the existence for the last 13 years of a custom in the steel trade under which the buyer's only remedy for defective steel is replacement or credit for its value, at the buyer's option; the seller not being liable for cost of labor or other consequential damages. Defendant presented no testimony to the contrary. It appeared, however, upon cross-examination of plaintiff's agent and witness that he learned of the existence of the custom about 13 years before "by getting around among the trade and from hearsay evidence in the steel business. I observed it; * * * it was in the air"; that it was always in the plaintiff's contracts; that his knowledge of this custom was not based solely on the fact that he always saw it in plaintiff's contracts, although that fact "would have something to do with it," although "not a very important part." Defendant insists that this cross-examination created a conflict of testimony, thus not leaving the testimony as to custom undisputed.

[5, 6] In our opinion, however, this cross-examination did not create a conflict of testimony; at the most it affected only the weight of the testimony of this one witness. It did not affect the testimony of other witnesses already referred to. Not only did plaintiff's agent testify

that the same custom prevailed, whether the contract of sale was written or verbal, but the record states, in that connection, that "other witnesses called by plaintiff testified that the same custom prevailed, whether or not the contract was written or verbal, or contained any provision limiting the buyer's remedy to replacement." In the absence of evidence contradicting the express, and presumably competent, testimony offered by plaintiff (indeed, the competency of plaintiff's witnesses is not questioned), we think the trial judge would have been justified in instructing the jury that the custom was established by uncontradicted evidence, even if reference thereto was not contained in the contract here in question.

We cannot say that such custom is unreasonable. See Sloan v. Wolf (C. C. A. 8) 124 Fed. 196, 59 C. C. A. 612. This conclusion is fortified, not only by defendant's failure to present testimony disputing the asserted custom, but by the fact, as indicated by the history already set out herein, that when the defective steel was first discovered defendant seems practically to have construed its remedy as limited to a replacement of the defective steel. So far as the record shows, it was not until about September 1, 1918, that defendant claimed damages for the cost of handling and working the defective steel.

[7] But the custom in question did not forbid recovery for failure to replace defective and unused steel, whose purchase price was, according to the tendency of the testimony, $4,605.15 in excess of its scrap value. The record is express that no replacement of the steel was in fact ever made, nor was any credit given defendant on that account. It does not conclusively appear that plaintiff itself was willing to make replacement, or that defendant was in fault for failing to obtain it. It had distinctly asked replacement, and the record would support a finding that plaintiff had at least unreasonably delayed making it. But for his conclusion that the entire action was barred by payment of the purchase price, presumably the trial judge would have allowed (as he should) whatever amendment of the cross-petition might be thought necessary to meet the proofs.

For the error in directing verdict for plaintiff in full of its claim, the judgment of the District Court must be reversed, and a new trial had, unless plaintiff shall, within 30 days after the filing of this opinion (or within such further time as may be given by the district court), duly enter its remittitur of the judgment rendered to the extent of $4,-605.15, with interest thereon from the date of judgment, and within such time file in this court due certificate of the fact of such remittitur. In case such action is taken, the judgment of the District Court, as so reduced, will be affirmed. Plaintiff in error will recover the costs of this court.