UNITED STATES, for Use and Benefit of E. B. KAISER CO. v. SOUTHERN PIPING & ERECTING CO., Inc., et al.

Civ. No. 518.

United States District Court
E. D. Tennessee, Northeastern Division.
April 28, 1950.

Upon After Verdict Motions Aug. 19, 1950.

Frantz, McConnell & Seymour, Knoxville, Tenn., for plaintiff.

Simmonds & Bowman, Johnson City, Tenn., for defendant.

DARR, Chief Judge.

This cause is before the Court upon settlement of the judgment. Each of the parties has submitted a judgment in accordance with its contentions. The controversy affects the allowance of interest and the costs.

The original plaintiff claims interest upon the amount deposited in court, $11,553.19, from the date fixed by the Court, September 27, 1948, to the time this money was received by it on May 25, 1949, but also claims on the amount recovered by the litigation, $8,528.25, from September 27, 1948, to the date of judgment on April 12, 1950. The original plaintiff insists that the costs should be equally divided between the parties.

The cross-plaintiff is willing to concede the interest claim made by the original plaintiff, providing the cross-plaintiff receives interest on the amount recovered in the litigation by the cross-action from September 27, 1948, to April 12, 1950. The cross-plaintiff insists that the original plaintiff should pay all the costs.

The question of interest is in the sound discretion of the Court. The amounts involved herein were certainly in meritorious controversy from the viewpoints of the parties. The fact that the cross-plaintiff paid into court $11,553.19, as being in full of what they owed, would not change the fact that the whole amount was in controversy. A trial to the Court and a jury resulted in disclosing that both parties were in error as to the amounts due and owing. Therefore I think discretion should be exercised to make some apportionment of the interest rather than to allow full amounts.

I conclude (1) the cross-plaintiff is not entitled to any interest for the amounts awarded by the jury for the obvious reason that these were credits on what it owed to the original plaintiff and not money withheld; (2) the original plaintiff should have interest upon the balance owing to it after the controversy was adjusted, $8,528.25, from September 27, 1948 to April 12, 1950. But because of the equities heretofore set out the original plaintiff is denied any interest upon the amount paid into court, to-wit, $11,553.19.

I am further comforted by this arrangement by reason of the fact that six percent per annum is allowed and this is a high

rate of interest considering the present worth of money.

■ In view of the fact that it was necessary for each of the parties to have in attendance the witnesses used in the portions of the case in which each was unsuccessful, each party should pay the expenses incident to its witnesses, the balance of the costs to be equally divided as the results reflect approximately a fifty percent loss for each.

The Court has prepared a judgment in accord with this memorandum.

■ Concerning the filing by both parties of motions to have the verdicts set aside and a judgment now entered in accordance with motions for directed verdicts made at the trial in accord with Rule 50 (b), Federal Rules of Civil Procedure, 28 U.S.C.A., I suggest that these motions be considered at the same time motions for new trial are heard.

These motions may be together, in accord with said Rule 50(b), but the motions filed have to be within ten days after verdict while the motions for new trial have to be within ten days after entry of the judgment. There could be no wrongful procedure in having both heard at the same time.

### Upon After Verdict Motions

The issues, upon which the verdict was returned, were made by complaint and answer and counterclaim and answer. For convenience herein parties will be referred to in their status in the original action; however, reference to the defendant will indicate the Southern Piping & Erecting Company, Inc., there being no necessity to consider the questions as to the other defendant.

The plaintiff moves for a judgment notwithstanding the verdict of the jury, setting aside the verdict for $4000.00 damages and $5850.00 credit for returned materials; and for a directed verdict in accordance with the motion made on the trial.

The defendant also makes a similar motion as to the item of $5850.00 reported by the jury as to the value of materials returned; and moves for a judgment for $8470.53 notwithstanding the verdict.

The questions raised by the motions, or most of them, were considered and decided at the time of the trial. In addition to what may have been said at the trial the following observations and conclusions are presented for decision of the motions.

Plaintiff's motion raises the question that the oral agreement of April 22nd and the telegram of April 28, 1948, transmitted by plaintiff, specifying delivery dates, was void and unenforceable:

1. Because not supported by a valid consideration;

2. Because not executed in compliance with the statute of frauds; and

3. That a breach of its terms is not actionable because notice of a claim for damages therefor was not seasonably given.

Under this motion the insistence is made that the agreement to return the commodities was in itself a sale, within the term of the Uniform Sales Act, Williams' Code of Tennessee, sec. 7197 and is void and unenforceable as being within the statute of frauds.

A determination of these questions makes necessary a brief statement of the facts.

The original contract for the purchase by the defendant from plaintiff of certain cast iron specialties for a steam distribution system bears date of February 3, 1948, and calls for delivery "at once".

On the back of the plaintiff's acceptance blank is printed the statement: "All orders and agreements must be in writing and are subject to acceptance and approval by our Home Office at Chicago, Ill., and if so accepted and approved, are subject to regulations by Governmental authority, shortage of material and supplies, labor stoppages, accidents and other causes beyond our control."

The defendant purchased these commodities in compliance with specifications in a contract made with the United States for installation of a steam distribution system at Oak Ridge, Tennessee. In that contract the defendant was required to complete the ·

work within 120 days, of which fact the plaintiff was notified.

The plaintiff failed to deliver any of the commodities (with the exception of a small amount not considered material) prior to April 22, 1948. Defendant's repeated demands for delivery were ineffectual, and plaintiff justified its delay by reliance on the conditions above quoted, printed on the reverse side of its acceptance form and which it insisted were a part of its contract.

On account of defendant's delay in starting the work, due to plaintiff's failure to furnish the commodities purchased, the Government indicated an intention to cancel the contract with defendant. When plaintiff was informed of the prospective cancellation, one of its principal officials came to Tennessee on April 22, 1948, and conferred with officials of defendant and the United States, as a result of which plaintiff agreed orally to commence deliveries on a specified date and continue deliveries periodically so that defendant might complete its contract with the United States without penalty for delay. On April 28, 1948, the plaintiff, for the purpose of confirming the delivery arrangements, sent a telegram to its selling agent which was in turn delivered to the defendant reading as follows:

"To Phil Minor:

"Southern Piping Order 20 lengths 4 x 8 scheduled to leave 30th, 29 lengths 1½ x 4 9 lengths 2 x 6 May 4th. All filler pieces and 2 x 6 standard lengths to complete pit A to all bldgs. of group 2 and some 2 x 6 and 2½ x 6 standard lengths for group 1 May 7th. Balance on conduit between then and May 21. Expansion joints for group 2 promises us for May 12th and balance by May 21st.
 "E. B. Kaiser Co."

The dates specified, commencing April 30 and extending through May 21st, were not exactly in conformance with the dates agreed on orally on April 22nd; but were treated as acceptable by defendant, and it assembled a force of men and made preparations to use the materials accordingly.

The schedule of deliveries was not maintained but was successively delayed and final delivery was not completed until July 13, 1948.

On September 27, 1948, defendant notified plaintiff that it claimed damages for delay in shipment. This claim was not sooner made because of the time necessary to calculate the damage from the mass of records, time sheets, production schedules, etc.

In the meantime defendant had requested plaintiff to accept a return for credit of certain parts not needed in the construction and defendant claimed consent was given. This plaintiff denied. It is conceded, however, that they were returned, but plaintiff claimed the parts were damaged and not suitable for sale generally. Defendant showed the invoice price to be $8470.53.

Paragraph 6 of the "Conditions of Sale" printed on plaintiff's acceptance form reads: "Goods cannot be returned unless our consent has first been obtained. Credit for goods then returned will be entered less all transportation charges, reconditioning expenses, and ten percent of invoice price to cover cost of handling."

Under the foregoing facts, both plaintiff and defendant treat the oral agreement of April 22nd and the telegram of April 28, 1948, setting out a specific schedule of delivery dates, as a new and independent contract concerning deliveries; and the defendant's claim for damages is based upon the alleged failure to deliver accordingly.

In this connection plaintiff interposes the defenses of (1) want of consideration; (2) statute of frauds; and (3) absence of notice.

 These defenses are not sound. This oral agreement and telegram were undoubtedly based upon the obligation in the original contract to deliver and were proposed by plaintiff for the purpose of avoiding a cancellation by the defendant of the original contract.

 The general rule is that a pre-existing liability is a good consideration for a new promise. 17 C.J.S., Contracts, § 122, p. 472. The waiver of a right, as of the right

to rescind a contract, is likewise a good consideration. 17 C.J.S., Contracts, § 103, p. 456. Cf. United Steel Co. v. Casey, 6 Cir., 262 F. 889.

The statute of frauds is fully satisfied where "the buyer shall accept part of the goods or choses in action so contracted to be sold, or sold, and actually receive the same". Williams' Code of Tenn. sec. 7197. As the materials involved in the contract were admittedly received and accepted by the buyer, the statute of frauds can have no application. Ashley & Gibbs v. Preston, 162 Tenn. 540, 39 S.W.2d 279; Gessler v. Winton, 24 Tenn.App. 411, 145 S.W.2d 789.

As to the notice "within a reasonable time", which the buyer is required to give under Tennessee Code section 7242, to support a claim for damages for goods actually received and accepted, the Court cannot say that as a matter of law the notice given by defendant in this case was not within a reasonable time. The last material was furnished July 13, 1948, and the notice of claim for damages was given on September 27, 1948, as soon as the amount of damages could be ascertained or reasonably approximated. What is a "reasonable time" is generally a question of fact for the jury. Wildnan Mfg. Co. v. Davenport Hosiery Mills, 147 Tenn. 551, 249 S.W. 984; Texas Motorcoaches v. A. C. F. Motors, 3 Cir., 154 F.2d 91; Herbrand Co. v. Lackawanna Steel Co., 6 Cir., 280 F. 11. In this case a jury question was presented and the Court is satisfied with the jury's finding in favor of the defendant.

The Court does not consider the oral agreement of April 22nd or the telegram of April 28, 1948, as an independent, separate contract between the parties. As the original contract provided that the delivery was subject to "shortage of material and supplies, labor stoppages, accidents and other causes beyond our control", as printed on the back of the plaintiff's acceptance form, it must result that there was no definite time specified for delivery. The effect of such a contract is that deliveries must be made in a reasonable time. Texas Co. v. Brilliant Mfg.

Co., 3 Cir., 2 F.2d 1; American Concrete Steel Co. v. Hart, 2 Cir., 285 F. 322.

The oral agreement and telegram in April were only a proposal by the seller, accepted by the buyer, as to what would constitute a reasonable time for delivery to fulfill the obligation of the contract. It was evidently so intended by the parties. The old contract was not in any respect modified or changed. This arrangement was therefore mutually entered into as clarifying and specifying the rights and obligations with respect to delivery which had been left uncertain and undetermined in the original contract, and thus became engrafted on and a part of the original. In other words, it was the parties' expressed understanding of what would, under the contract, be a reasonable time for delivery which the contract required. As such no consideration would be required and it would not be within the provisions of the statute of frauds.

The plaintiff's motion as to the question of damages is overruled.

The plaintiff also insists that "the alleged contract for the return of materials * * was a resale to the original vendor and as such was within the statute of frauds." This position is likewise unsound.

As hereinbefore stated, the contract provided for a return of the commodities to the plaintiff and the terms under which they could be returned, with the "consent" of the plaintiff.

Whether consent was given was a question of fact for the jury. The finding that consent was given is supported by competent evidence and is approved by the Court.

The return of the goods, being provided for under the contract, is not a separate agreement subject to the statute of frauds. Ashely & Gibbs v. Preston, supra.

The motion of plaintiff is therefore overruled in its entirety.

Defendant's motion challenges the verdict of the jury as to the value of commodities returned. The contract provides for deduction of ten percent from invoice prices, freight charges and recon-

ditioning expenses. It appears that the invoice price was $8470.53, and under the evidence of the condition of the commodities when redelivered to the plaintiff, the Court is of the opinion that the verdict of the jury in the sum of $5850.00 is fair and equitable.

The motion of defendant is likewise overruled.

The judgment heretofore entered on the verdict of the jury will not be modified.